

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00315-CV

**LDF CONSTRUCTION, INC., LYNN D. FOSTER,
MARK W. TODD ARCHITECTS, INC. AND
MARK W. TODD,**

                                        **Appellants**

 **v.**

**SAM BRYAN, CONNIE BRYAN, AND SAMMY
R. BRYAN, DDS, P. A.,**

                                        **Appellees**

From the 278th District Court
Walker County, Texas
Trial Court No. 24,273

### No. 10-08-00348-CV

# IN RE LDF CONSTRUCTION, INC. AND LYNN D. FOSTER

**Original Proceeding**

### 10-08-00407-CV

# IN RE MARK TODD AND MARK W. TODD ARCHITECTS

**Original Proceeding**

# OPINION

This is one of the last combinations of proceedings where a party has to pursue a mandamus proceeding if the Federal Arbitration Act (FAA) might be applicable and also pursue an interlocutory appeal if the Texas Arbitration Act (TAA) might be applicable. The invitation of the Texas Supreme Court has been acted upon. *See Am. Std. v. Brownsville Indep. Sch. Dist.* (*In re D. Wilson Constr. Co.*), 196 S.W.3d 774, 780 n.4 (Tex. 2006) ("We again invite the Legislature, '[i]n the interests of promoting the policy considerations of rigorous and expedited enforcement of arbitration agreements, . . . to consider amending the Texas Act to permit interlocutory appeals of orders issued pursuant to the Federal Act.'" (citing *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992)). Effective September 1, 2009, section 51.016 of the Civil Practice and Remedies Code was amended to allow an interlocutory appeal of an order denying a motion to compel arbitration under the FAA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (Vernon Supp. 2009). These proceedings, however, were filed before the effective date of the new statutory provision.

In these proceedings, the appellants/relators have had to do things the hard way—file both an appeal and petitions for a writ of mandamus. It has made the task for both the trial court and this Court more complex due to multiple issues and methods necessary to insure that the proper procedural vehicle was used to obtain review. Because in this instance we conclude that the FAA applies, we dismiss the interlocutory appeal, *LDF Construction, Inc. v. Bryan*, No. 10-08-00315-CV. We conditionally grant the

petitions for writ of mandamus to compel arbitration filed by LDF Construction, Inc. and Lynn D. Foster (LDF) and Mark Todd and Mark Todd Architects (Todd).

## A BRIEF HISTORY

Sam Bryan, an orthodontist, contracted with Joyce Matlack, a California resident who specialized in dental-related interior designs, to provide interior design services for a new office for Bryan. Bryan then contracted with Todd to develop a set of master and schematic plans to be designed according to the interior plans provided by Matlack. Three years later, LDF entered into an agreement with Bryan to build the new office. The construction of the office was to comply with the specifications and designs by Todd. Bryan's contracts with LDF and Matlack contained arbitration provisions, but the contract between Bryan and Todd did not.

When construction of the office did not go as expected, Bryan, his wife, and Sammy R. Bryan, DDS, P.A. (Bryan) sued LDF, Todd, and Matlack and Matlack/Van Every Design, Inc. (Matlack).[1] Todd, Matlack, and LDF each moved to compel arbitration. The trial court initially granted Matlack's motion to compel arbitration. However, that ruling was withdrawn at the hearing on Todd's and LDF's motions. The trial court ultimately denied Todd's and LDF's motions to compel arbitration but did not rule on Matlack's motion. That motion remains pending in the trial court. LDF and Todd filed separate notices of appeal of the trial court's decision and filed separate

---

[1] Bryan, in response to Todd's and LDF's petitions for writ of mandamus, conceded the validity of the Matlack arbitration provision but, nevertheless, sued Matlack along with Todd and LDF.

petitions for a writ of mandamus. Both notices of appeal were filed in one proceeding, TEX. R. APP. P. 12.2(c), whereas each mandamus was filed as a separate proceeding.

## GENERAL LAW OF ARBITRATION

The Texas statutes governing arbitration of disputes are found in Chapter 171 of the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001-171.098 (Vernon 2005). The FAA, which applies to "any maritime transaction or a contract evidencing a transaction involving commerce," is found in title 9 of the United States Code. *See* 9 U.S.C. § 2.

In evaluating a motion to compel arbitration, a court must first determine whether a valid arbitration agreement exists, and then whether the agreement encompasses the claims raised. *Am. Std. v. Brownsville Indep. Sch. Dist.* (*In re D. Wilson Constr. Co.*), 196 S.W.3d 774, 781 (Tex. 2006); *see In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006) (per curiam). Whether a valid arbitration agreement exists is a legal question subject to de novo review. *Id.* Although the Texas Supreme Court has repeatedly expressed a strong presumption favoring arbitration, the presumption arises *only after* the party seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) (emphasis added). Courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001).

Arbitration agreements are interpreted under traditional contract principles. *J.M. Davidson*, 128 S.W.3d at 227. If the trial court finds a valid agreement, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration.

LDF Construction, Inc. v. Bryan                                                                                                    Page 4

*Id.* Absent a defense to enforcing the arbitration agreement, the trial court has no discretion but to compel arbitration and stay its own proceedings. *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002) (per curiam).

The types of issues raised as a defense determine whether the arbitrator or the trial court resolves those issues. A court may determine a specific challenge to the validity of the arbitration agreement but a challenge to the validity of the contract as a whole, and not specifically to the arbitration agreement, must go to the arbitrator. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448-449, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 647-648 (Tex. 2009). *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967) (claim of fraud in the inducement of arbitration clause itself may be adjudicated by court, but court may not consider claim of fraud in the inducement of the contract generally); *In re Houston Pipe Line Co.*, No. 08-0800, 2009 Tex. LEXIS 468, *4, 52 Tex. Sup. J. 1098 (Tex. July 3, 2009) ("When a party disputes the scope of an arbitration provision or raises a defense to the provision, the trial court, not the arbitrator, must decide the issues."); *In re Morgan Stanley & Co.*, 293 S.W.3d 182, 185 (Tex. 2009) ("[D]efenses attacking the validity of a contract as a whole, and not specifically aimed at the agreement to arbitrate, are for the arbitrator, not the court."); *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008) ("[T]he party opposing arbitration must show that the fraud relates to the arbitration clause specifically, not to the broader contract in which it appears."); *Perry Homes v. Cull*, 258 S.W.3d 580, 589 (Tex. 2008) ("[A]rbitrators generally must decide defenses that apply to the whole

contract, while courts decide defenses relating solely to the arbitration clause."); *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 190 & n.12 (Tex. 2007) (noting that a defense relating to the parties' entire contract rather than the arbitration clause alone is a question for the arbitrators); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001) (noting that the defenses of unconscionability, duress, fraudulent inducement, and revocation must specifically relate to the arbitration part of a contract and not the contract as a whole if they are to defeat arbitration, and that validity of an arbitration provision is a separate issue from validity of the whole contract). Further, questions that "grow out of the dispute and bear on its final disposition," for example, whether conditions precedent have been met, notice, time limits, laches, and estoppel, are procedural arbitrability issues that are reserved for resolution by the arbitrator. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002). In contrast, the trial judge decides questions of substantive arbitrability, which implicate "gateway" issues, for example, whether a particular agreement binds the parties to arbitrate. *Id*. at 85.

### THE TEXAS ANOMALY OF TAA VS FAA

The TAA and FAA provide alternative procedural vehicles for relief. *In re Educ. Mgmt. Corp.*, 14 S.W.3d 418, 425 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding). A trial court's order denying a motion to compel arbitration may be reviewed by interlocutory appeal when the motion is brought under the TAA. TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1) (Vernon 2005). Until just recently and when the orders at issue in these proceedings were signed, mandamus was the appropriate

vehicle to challenge an order denying arbitration under the FAA. *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007) (orig. proceeding) (per curiam); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 91 (Tex. 1996) (per curiam). *But see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (Vernon Supp. 2009). Prior to September 1, 2009, litigants like LDF and Todd who alleged entitlement to arbitration under the FAA, and in the alternative, under the TAA, were burdened with the need to pursue parallel proceedings—an interlocutory appeal of the trial court's denial under the TAA, and a writ of mandamus from the denial under the FAA. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992).

## WHICH ARBITRATION ACT APPLIES?

If the arbitration clause is enforceable under the FAA, an analysis of enforceability under the TAA is unnecessary. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783-84 (Tex. 2006). Accordingly, we first review the petition for writ of mandamus to assess enforceability of the arbitration provision under the FAA.

The FAA applies to "any maritime transaction or a contract evidencing a transaction involving commerce." *See* 9 U.S.C. § 2. "'[C]ommerce' . . . means commerce among the several States." 9 U.S.C. § 1. Interstate commerce is not limited to the interstate shipment of goods, but includes all contracts "relating to" interstate commerce. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001). The FAA "extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach." *L & L Kempwood Assocs., L.P. v. Omega Builders, Inc. (In re L & L Kempwood Assocs., L.P.)*, 9 S.W.3d 125, 127 (Tex. 1999) (per curiam).

Bryan alleged in his first amended petition that Matlack was a resident of California. He also alleged that the company, Matlack/Van Every Design, Inc. was a California company. Bryan alleged that both Matlack and the company conducted business in Texas but did not have a principle office in Texas and did not have a registered agent listed with the Secretary of State. Service of process was to be effectuated by serving Matlack at her business address in Santa Cruz, California.

Bryan further alleged that in May of 2004 he met Matlack while attending an orthodontist meeting in Florida. Matlack informed Bryan that she was an interior designer, specializing in the design of dental offices. Matlack eventually traveled to Texas to meet with Bryan to discuss designing a new office for Bryan in Huntsville, Texas. Bryan approved a contract submitted by Matlack. The letterhead of the contract, which was admitted into evidence at the hearing on LDF's and Todd's motions to compel arbitration, indicated that Matlack's business address was Santa Cruz, California. According to Bryan, Matlack then sent design plans to Bryan for his approval and eventually, a plan was approved.

There was no other evidence about the nature of the contract or services or source of supplies. This is, however, a commercial construction contract, and there was no effort to show that the materials were of a uniquely local origin. Even if the materials were of such a nature, there is still an impact on interstate commerce. *See The Daniel Ball*, 77 U.S. 557, 565, 19 L. Ed. 999, 10 Wall. 557 (1870) (although goods loaded and unloaded within the same state, interstate commerce was impacted because some

goods were destined to other states). Further, Bryan does not contend that the FAA does not apply. Accordingly, we hold that the FAA, not the TAA, applies.

## LDF AND FOSTER

In evaluating LDF's motion to compel arbitration, we first determine whether LDF proved a valid arbitration agreement exists. An agreement to arbitrate is valid except on grounds as exist at law or in equity to revoke any contract. 9 U.S.C. § 2; *see In re Morgan Stanley & Co.*, 293 S.W.3d 182, 184 (Tex. 2009). LDF introduced its contract and arbitration provision into evidence at the hearing on its motion to compel arbitration. The provision states that "[a]ny claim arising out of or related to the Contract…is subject to arbitration." Bryan's only dispute with the validity of the provision, both to the trial court and on appeal, is that the entire contract was procured by fraud. As discussed more fully below, this is not a specific challenge to the validity of the arbitration provision but is a challenge to the validity of the contract as a whole and such is left to resolution by the arbitrator. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-446, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006). There was no challenge to the validity solely of the arbitration provision in the contract, and LDF thus satisfied the first step.

Next, we determine whether the claims raised by Bryan fall within the scope of the arbitration provision. When addressing this issue, we focus on the factual allegations involved in the dispute and not on the legal causes of action raised by the parties. *In re Conseco Fin. Servicing Corp.*, 19 S.W.3d 562, 568 (Tex. App.—Waco 2000, orig. proceeding). Any doubts as to whether the dispute falls within the scope of the

arbitration agreement should be resolved in favor of arbitration. *Id*. (citing *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 62 & n.8, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995)).

Bryan pled many causes of action against LDF and Foster: breach of contract, breach of implied warranty and workmanlike performance, negligence, and various claims of fraud. After securing designs and plans from Matlack and Todd, Bryan contracted with LDF to construct a new office. The contract included Todd's and Matlack's work. LDF was to finish the office within 210 days and "execute the Work described in the Contract Documents." The contract also listed Todd as the architect overseeing the project. Bryan alleged LDF knew the provisions in the contract relating to the architect would not be followed.

Construction of the office did not go well. There were problems with the foundation, patient chairs were not centered with the windows, electrical panels and conduit had to be moved, and weeks of inactivity occurred at the jobsite. When it came time to install the sheetrock, Bryan began to question the ceiling heights. Bryan alleges he received either unintelligible answers or no answer at all from LDF, Matlack, and Todd. LDF, Matlack, and Todd eventually acknowledged that the ceiling heights could be altered but for an additional cost.

Bryan alleged that LDF, Todd, and Matlack were aware of the problems with the ceiling height and discussed among themselves ways to "cover-up" and fix the problems, rather than informing Bryan of the problems. Bryan also alleged that LDF, Todd, and Matlack held themselves out to be professionals who where competent and

experienced. Bryan claimed that LDF, Todd, and Matlack contracted with him "to provide services that would facilitate, correspond, and accentuate the endeavors contractually and voluntarily undertaken by the other defendants" according to a specific scheme and design approved by Bryan.

Bryan further alleged that LDF, Todd, and Matlack failed with regard to workmanship and integrity of the work undertaken by them. It was alleged that Todd and Matlack prepared inaccurate, incompatible plans while LDF, who had a duty to ensure that construction was conducted in accordance with the plans, did not inform Bryan of the problems with the plans upon LDF's discovery of the problems. Furthermore, Bryan alleged, LDF performed services in an unacceptable and unworkmanlike manner in that among other things, deviations from the plans were made without informing Bryan.

Bryan added a claim to his first amended petition regarding a bill from a sub-contractor for carpentry work. Rough carpentry work was completed in October of 2007. According to Bryan, copies of Applications and Certificates for Payment, which were sworn to by LDF for the months of September and October, indicated that no money was owed regarding the carpentry. Bryan claimed that upon closer inspection, the certificates were inaccurate and that LDF knew they were inaccurate. Bryan alleged that LDF provided the bill to the subcontractor who signed it and sent it on to Bryan. Bryan further alleged that LDF used this bill to cause Bryan financial injury, mental anguish, and emotional distress.

All of Bryan's claims center on the construction of Bryan's office and the failures of the office's construction to comply with Bryan's contract. The language of the arbitration provision is very broad and encompasses any claim "arising out of or related to" the contract. There is no claim by Bryan that does not have its origin outside the relationship created by the contract.[2] Even Bryan's tort claims arise from the relationship around the contract. Likewise, Bryan's claims in his personal capacity (non-signatory) against Foster in his individual capacity (non-signatory) all arise out of that same relationship, the one created by the contract, and but for the contract would not exist. *In re Conseco Fin. Servicing Corp.*, 19 S.W.3d 562, 570 (Tex. App.—Waco 2000, orig. proceeding). Finally, we note that there is no suggestion that Foster's actions were in any capacity other than as an agent for LDF.

Accordingly, we hold that all claims against LDF, including those that are made against Foster, are within the scope of the arbitration agreement.

*Defenses*

Having determined that LDF proved the existence of an arbitration agreement between the parties and that the claims asserted by Bryan are within the scope of the arbitration agreement, we now turn to the defenses to arbitration raised by Bryan and which appear to have been relied upon by the trial court. The primary defense is that the construction agreement, including the arbitration agreement, was induced by fraud.

---

[2] The only claim Bryan contends was outside the scope of the arbitration provision is his claim pursuant to the fraudulent lien statute. TEX. CIV. PRAC. & REM. CODE § 12.002 (Vernon Supp. 2009). Nevertheless, this claim also falls within the scope of the arbitration provision because, but for the contract with LDF, the subcontractor would not have incurred costs of performing carpentry work for which he sought payment from Bryan. *See In re Conseco Fin. Servicing Corp.*, 19 S.W.3d 562, 570 (Tex. App.—Waco 2000, orig. proceeding).

This is a defense to the entire contract. This is not just a defense to the mandatory arbitration provision. A plaintiff cannot sue for the benefits on the contract, in essence sue for breach of contact, and sue on only part of the contract. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex. 2001) ("[A] litigant who sues based on a contract subjects him or herself to the contract's terms."). Having brought the suit as a breach of contract claim, a plaintiff cannot excise a single paragraph from the contract, the arbitration clause, and reject it. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133 (Tex. 2005) ("Having obtained these substantial actions from Weekley by demanding compliance with the provisions of the contract, Von Bergen cannot equitably object to the arbitration clause attached to them."). Bryan is not asserting that the fraud/unconsionablilty claim goes to only the arbitration clause. Since the claim is asserted to the contract as a whole, it is a claim that is decided by the arbitrator, rather than the court. *See In re Morgan Stanley & Co.*, 293 S.W.3d 182, 185 (Tex. 2009).

Bryan also asserts that LDF cannot avail itself of the arbitration provision because of conditions precedent to enforcement that were not, and cannot now be, performed. The provision states that prior to arbitration, the parties will attempt to resolve the dispute, first through the architect and then through nonbinding mediation.[3] Bryan asserts that because these provisions are conditions precedent to the institution of litigation and cannot be complied with, the arbitration provision is negated. We disagree. There is no indication in the provision that the parties intended to dispense

---

[3] We note that while these proceedings were pending, we abated the proceedings for mediation. A settlement was not reached.

with arbitration if the other methods of resolution did not occur first. *In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007). Further, Bryan cannot unilaterally skip the efforts to resolve the dispute by other methods by skipping directly to litigation and thereby avoid the arbitration provision. *Cf. Global Evangelism Educ. Ministries, Inc. v. Caddell*, No. 04-08-00686-CV, 2009 Tex. App. LEXIS 1085, *5-6 (Tex. App.—San Antonio Feb. 18, 2009, no pet.) (mem. op.) (party that first filed suit rather than seeking mediation cannot rely on the failure of conditions precedent to evade arbitration). To hold otherwise would allow the provision to be avoided simply because one party chose to go directly to litigation. The agreement provided for three levels of dispute resolution before enforcement in the courts. Because this is an issue to be decided by the arbitrator,[4] the arbitrator may decide that the methods of dispute resolution skipped by Bryan need to be utilized before proceeding to arbitration; or the arbitrator may decide that at this point the other methods of dispute resolution would be ineffective and, therefore, proceed with the resolution of the disputes by arbitration.

Bryan also asserts that LDF cannot avail itself of the arbitration provision in Matlack's contract. In this regard, Bryan argues that because LDF comes to court with unclean hands, LDF cannot use a mandamus proceeding to compel arbitration as a non-signatory under another party's agreement. Because of our holdings above, we are not utilizing the arbitration provision in Matlack's agreement but rather we are using the provision in LDF's own contract to compel arbitration of all claims Bryan has asserted against all the LDF related defendants.

---

[4] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002).

Accordingly, because Bryan has failed to prove any valid reason why their claims against LDF should not be referred to binding arbitration, we conditionally grant LDF's petition for writ of mandamus.

## TODD

We now turn to the trial court's denial of Todd's motion to also refer Bryan's claims against Todd to arbitration. Todd had a written contract with Bryan but that contract did not have an arbitration provision in it. Thus, Todd is a non-signatory to any arbitration agreement. Bryan asserts that the trial court, having reviewed the evidence, did not abuse its discretion in refusing to refer the claims raised against Todd to arbitration. We disagree.

As a rule, arbitration of a claim cannot be compelled unless it falls within the scope of a valid arbitration agreement; but sometimes a person who is not a party to the agreement can compel arbitration with one who is, and vice versa. *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006). Non-signatories to an agreement subject to the FAA may be bound to an arbitration clause when rules of law or equity would bind them to the contract generally. *In re Labatt Food Serv.*, 279 S.W.3d at 643; *In re Weekley Homes*, 180 S.W.3d at 131. Several rules of law and equity, such as the principles of equitable estoppel and agency, may be used to compel arbitration. *See In re Labatt Food Serv.*, 279 S.W.3d at 644; *see also Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000).

Equitable estoppel applies to allow a non-signatory to compel arbitration when the signatory to a written agreement containing an arbitration clause must rely on the

terms of the written agreement in asserting its claims against the non-signatory. *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. Tex. 2000). When a signatory's claims against a non-signatory make reference to or presume the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. *Id.*; *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 307 (Tex. 2006). The Fifth Circuit refers to this as the "intertwined-claims test." *Grigson*, 210 F.3d at 527. The Texas Supreme Court has referred to this principal as "direct benefits" estoppel. *See Meyer*, 211 S.W.3d at 305 ("a person who seeks by his claim 'to derive a *direct benefit* from the contract containing the arbitration provision' may be equitably estopped from refusing arbitration." (emphasis added)).

Todd asserts that Bryan is equitably estopped from preventing arbitration of the claims asserted against them. As with LDF, Bryan alleged various claims against Todd: breach of contract, breach of implied warranty and workmanlike performance, negligence, DTPA, and various claims of fraud. According to the first amended petition, Bryan began searching for an architect in 2004 to design his office based upon the design, interior details, and overall schematics supplied by Matlack. Bryan ultimately contracted with Todd. Bryan's contract with Todd provided that Todd would devise a set of master and schematic plans to be designed according to the plans and specifications provided by Matlack. Matlack sent plans to Bryan for approval. Todd was to design the appropriate plans to the approved specifications set out by Matlack. Todd drafted approximately 60 pages of intricate drawings, design diagrams, roof plans, ceiling plans, etc.

Thus far, the allegations in this section are those essentially unique to Todd or that relate to Todd and Matlack. Previously, we have discussed in detail, for the purpose of addressing the scope of LDF's arbitration provision, the allegations made against LDF. It is now necessary to repeat many of those same allegations. However, this time, the purpose of this review of the allegations is to show how interrelated Bryan's allegations against LDF, Todd, and Matlack are and thus how impractical it would be to try to resolve the allegations against LDF and Matlack in one forum and those against Todd in another.

In 2007, LDF contracted with Bryan to construct the new building. The contract included Todd's and Matlack's work. LDF was to finish the building within 210 days and "execute the Work described in the Contract Documents." The contract also listed Todd as the architect overseeing the project. Bryan alleged that LDF knew the provisions in the contract relating to the architect would not be followed.

As previously described, construction of the office did not go well. When it came time to install the sheetrock, Bryan began to question the ceiling heights. Bryan alleged he received either unintelligible answers or no answer at all from LDF, Matlack, and Todd. LDF, Matlack, and Todd eventually acknowledged that the ceiling heights could be altered but for an additional cost. As construction problems mounted, Bryan began to investigate the cause.

After a review of the plans, Bryan learned that the plans of Todd and Matlack were incompatible and that Todd's plans did not incorporate Matlack's designs. Bryan alleges that LDF, Todd, and Matlack were aware of the problems and discussed among

themselves ways to "cover-up" and fix the problems, rather than informing Bryan of the problems. LDF, Todd, and Matlack, Bryan alleged, held themselves out to be professionals who where competent and experienced. Bryan claimed that LDF, Todd, and Matlack contracted with him "to provide services that would facilitate, correspond, and accentuate the endeavors contractually and voluntarily undertaken by the other defendants" according to a specific scheme and design approved by Bryan.

Bryan further alleged that LDF, Todd, and Matlack failed with regard to workmanship and integrity of the work undertaken by them. Todd and Matlack prepared inaccurate, incompatible plans while LDF, who had a duty to ensure that construction was conducted in accordance with the plans, did not inform Bryan of the problems with the plans upon LDF's discovery of the problems. Furthermore, Bryan alleged, LDF performed services in an unacceptable and unworkmanlike manner in that among other things, deviations from the plans were made without informing Bryan.

In this instance, the claims against Todd are so intertwined and interdependent with the claims against LDF and Matlack, both of which have arbitration provisions in their contracts with Bryan, that it would be impractical to resolve the disputes against them in arbitration without simultaneously resolving the claims against Todd.

*Defenses*

Bryan asserts that Todd cannot assert equitable estoppel to compel Bryan to arbitration because Todd has unclean hands. Bryan relies upon the principle in law that he who seeks equity must do equity. *See Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988) ("It is well-settled that a party seeking an equitable remedy must do equity and come to

court with clean hands."). A party seeking to invoke this equitable doctrine must show that he has been seriously harmed and the wrong complained of cannot be corrected without applying the doctrine. *City of Fredericksburg v. Bopp*, 126 S.W.3d 218, 221 (Tex. App.—San Antonio 2003, no pet.). Bryan asserts that at the hearing he proved Todd did not come to court with "clean hands." Specifically, Bryan argues that Todd's attorney admitted that there was a discrepancy in the ceiling height. Further, he argues that in an email presented at the hearing, LDF knew of the discrepancies and sent nineteen "requests for information" to Todd requesting information from Todd on how to proceed. According to the email, Todd told LDF how to proceed regarding the ceiling height discrepancies.

Todd and LDF assert that Bryan did not present any evidence of "unclean hands" at the hearing. Specifically, Todd and LDF assert that this Court cannot rely on the email because it was not properly introduced into evidence at the hearing. We need not resolve whether trial counsel's references to documents not otherwise introduced into evidence was evidence properly before the trial court. Even if we consider the email and argument of counsel as evidence regarding the conduct of Todd, it would only go so show a possible breach of the contract and is not of the character of evidence that shows "unclean hands" such as to defeat the application of the doctrine of collateral estoppel to compel Bryan to arbitrate the claims against the non-signatory to the arbitration agreement, Todd, along with the claims that are subject to arbitration against LDF and Matlack.

Bryan also argues that the trial court had discretion not to apply equitable estoppel, even if it could be applied in the same circumstances. We disagree. "A trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 308 (Tex. 2006) (quoting, *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

Accordingly, we hold that Bryan's claims against Todd should also have been referred to arbitration and conditionally grant Todd's petition for writ of mandamus.

## MATLACK

Finally, we note that the trial court withdrew its order which referred the claims against Matlack to arbitration, holding that the order was rendered without adequate notice to Bryan. Bryan conceded in his brief filed with this Court that he does not contest the validity of the Matlack arbitration agreement. Matlack filed amicus briefs with this Court in these proceedings in support of having all the claims of Bryan against all the defendants referred to arbitration together. We have no reason to believe that the trial court will not grant Matlack's pending motion to refer Bryan's claims against Matlack to arbitration, especially in light of the discussion and holdings herein. Because the trial court has not ruled on Matlack's pending motion, because we have no proceeding before us which addresses that motion, and further because we cannot compel the trial court to rule on the motion in a certain way, we decline at this time to mandate the trial court's ruling on that motion. *See In re Salazar*, 134 S.W.3d 357, 358 (Tex. App.—Waco 2003, orig. proceeding); *see also State ex rel. Curry v. Gray*, 726 S.W.2d 125, 128 (Tex. Crim. App. 1987).

## CONCLUSION

In summary, we conditionally grant LDF's and Todd's petitions for writ of mandamus. A writ will issue only if the trial court fails to withdraw its order denying the abatement of the trial court proceedings and the referral of Bryan's claims against LDF and Todd to binding arbitration within 21 days from the date of this opinion. Further, the appeal by LDF and Todd is dismissed.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
Appeal dismissed
Petitions conditionally granted
Opinion delivered and filed March 10, 2010
[CV06]