

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-232-CV

LINDON M. STEWART                                                APPELLANT

V.

JOSEPH S. LANGDON AND                                           APPELLEES
KAREN LANGDON

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Lindon M. Stewart appeals from the summary judgment granted in favor of Appellees Joseph S. Langdon and Karen Langdon. In four issues, Appellant argues that the trial court erred by granting Appellees' cross-motion for summary judgment, by denying his motion for summary judgment, and by not awarding him attorney's fees. Because we hold that the trial court did not err by granting summary judgment for Appellees, we affirm.

---

[1] See Tex. R. App. P. 47.4.

## Background

In 1994, Appellees purchased property from their neighbors, Mark and Lillie Stewart (Appellant's uncle and aunt) and then sold the property to Laurel McGilvery; the property's purchase was partially financed with a vendor's note retained by Appellees. The parties also executed an "Option to Purchase Real Estate," in which McGilvery granted Appellees "an exclusive right of first refusal and option to purchase" the property if she wanted to sell it in the future. The instrument stated that it would expire in October 2005.

In 2003, McGilvery sold back to Appellees fifty-two acres of the property and obtained a release of lien on the remaining ninety-one acres that she retained. On November 30, 2007, McGilvery and Appellees executed another "Option to Purchase Real Estate" ("ROFR"), replacing the previous, now expired, instrument. The new instrument applied to the ninety-one acres that McGilvery still owned ("the Property"). The ROFR again granted Appellees "an exclusive right of first refusal and option to purchase" and stated that "[t]he purchase price for the . . . [P]roperty shall be on such terms and conditions as the parties agree." In the document, McGilvery agreed "to make available to [Appellees] any contract to purchase the [P]roperty given to [McGilvery] for the purpose of purchasing the [P]roperty prior to [Appellees] exercising their option to purchase the [P]roperty." The ROFR, which contained an expiration date of November 30, 2022, was recorded in the county property records.

2

On March 23, 2009, McGilvery executed a contract for sale of the Property ("sales contract") to Appellant. The sales contract listed the sale price as $450,000. Attached to the contract as Exhibit A was a document, drafted by Appellant, that acknowledged that the Property "[was] subject to an option agreement . . . giving [Appellees the] option to purchase the Property on the same terms as stated in this Contract if they exercise their election to purchase within five days in the manner stated in their Option Agreement." Exhibit A then stated that if Appellees elected to exercise their option, Appellant had the right to increase the amount of the offer by delivering an amended contract to McGilvery. This new amended offer would be presented to Appellees, and if they still wished to exercise their option, Appellant would again have the opportunity to increase the amount of his offer until either Appellees declined to purchase the Property or Appellant declined to increase his offer. In other words, Exhibit A attempted to set up an auction for the property between Appellant and Appellees. If Appellees did not exercise the option as to the amended contract offered by Appellant, then Appellant and McGilvery would proceed to closing on the amended contract.

A copy of the sales contract with Appellant's information redacted was forwarded to Appellees with notice that they had five days to elect to purchase the Property on the same terms. Appellees elected to purchase the Property. In doing so, they advised McGilvery that they did not consider Exhibit A to be binding on them and that, if she refused to sell the property to them, they would sue her for specific

3

performance. McGilvery sold the Property to Appellees for the same price that had been offered by Appellant in the sales contract—$450,000.

After McGilvery sold the Property to Appellees, Appellant sued Appellees, seeking a judgment ordering Appellees to convey the Property to him or, alternatively, a judgment for "loss of bargain damages." He filed a motion for partial summary judgment, asking the court to compel Appellees to convey the Property to him under the terms of the sales contract. He asserted that the "purported option agreement" between Appellees and McGilvery was unenforceable because it contained neither a definite purchase price nor a method of ascertaining the purchase price and was only an unenforceable agreement to negotiate. Alternatively, he argued that Appellees did not properly exercise the option because they did not comply with Exhibit A and therefore failed to accept all the terms and conditions of the sales contract. Appellant's motion also asked for a trial on some other issues that he later nonsuited. All of Appellant's claims that survived the nonsuit were addressed by his motion for summary judgment.

Appellees filed a cross-motion for summary judgment. They argued that the evidence established that they had a valid right of first refusal that they had properly exercised; that Appellant's contract with McGilvery was subject to the right of first refusal; that because Appellant was not a party to the agreement between them and McGilvery, he had no standing to assert it was invalid; that he was not entitled to equitable relief; and that they had established as a matter of law the affirmative

4

defenses of estoppel and unclean hands. The trial court granted their motion and denied Appellant's motion without specifying the grounds it relied on.

## Standard of Review

We review a summary judgment de novo.[2] We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.[3] We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[4] A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.[5] A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.[6] To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.[7]

---

[2] *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[3] *Id.*

[4] *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

[5] *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *see* Tex. R. Civ. P. 166a(b), (c).

[6] *Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008); *see* Tex. R. Civ. P. 166a(b), (c).

[7] *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented.[8] The reviewing court should render the judgment that the trial court should have rendered.[9]

---

[8] ... *Mann Frankfort*, 289 S.W.3d at 848.

[9] ... *Id.*

**Analysis**

Appellant's first two issues address whether the trial court erred by granting Appellees' motion for summary judgment. In his first issue, Appellant argues that the trial court erred by granting Appellees' cross-motion for summary judgment because the summary judgment evidence did not establish that Appellees had a valid preemptive right[10] to purchase the Property.

In the trial court, Appellant argued that McGilvery was required to sell the Property to him under the sales contract unless Appellees had a valid, enforceable ROFR and that the instrument purporting to be a ROFR was not an enforceable contract because it had no price term. On appeal, he likewise argues that only the existence of a valid preemptive right could excuse McGilvery's failure to convey the Property to him and that the ROFR was not an enforceable agreement because it contained no price term.

Appellees argued in their summary judgment motion that the ROFR, taken as a whole, provided that Appellees could exercise their right to purchase the Property on the terms in the sales contract and that Appellant was estopped from arguing that the ROFR did not so provide because in the sales contract, he affirmatively stated that the Property was subject to a ROFR that allowed Appellees to purchase the Property in accordance with the sales contract's terms. On appeal, Appellant must

---

[10] A right of first refusal is also referred to as a preemptive right or a preferential right. *FWT, Inc. v. Haskin Wallace Mason Prop. Mgmt., L.L.P.*, 301 S.W.3d 787, 793 (Tex. App.—Fort Worth 2009, pet. denied).

7

argue and show that Appellees failed to establish their entitlement to summary judgment on these grounds. In response to Appellees' estoppel claim, Appellant argues that he is not bound by his assertion on that point in the sales contract.

"Estoppel by contract," a form of quasi-estoppel, is simply a provision in the law that "a party is bound by the terms of his own contract until it is set aside or annulled for fraud, accident, or mistake."[11] With the application of estoppel by contract, "a party to a contract will not be permitted to take a position inconsistent with its provisions, to the prejudice of another."[12]

Exhibit A to the sales contract stated that "[t]he parties acknowledge that the Property is subject to an option agreement . . . giving [Appellees the] option to purchase the Property on the same terms as stated in this Contract if they exercise their election to purchase within five days in the manner stated in their Option Agreement." The exhibit then set up the auction provision relied on by Appellant, allowing Appellees to make an offer to buy on the same terms as Appellant but giving Appellant the right to make a counteroffer. Thus, Appellant stated in his sales contract, in a provision added by him, that the ROFR gave Appellees the option to

---

[11] *Swanson v. Am. Mfg. Co.*, 511 S.W.2d 561, 565 (Tex. Civ. App.—Fort Worth 1974, writ ref'd n.r.e.) (holding, in a suit for wrongful termination, that because employee signed an employment application providing that he could be dismissed if he made false statements on the application and that he would hold his employer blameless if he were dismissed because of that false statement, and because the employee admitted he had lied on the application, the employee was estopped from taking the position that his dismissal was actionable).

[12] *Id.*

purchase the Property on the terms set out in the sales contract. He should not be allowed to take a different position to the prejudice of Appellees while attempting to enforce the same sales contract against them.[13]

Appellant states in his brief that "Exhibit A of the Contract . . . mischaracterizes the ROFR and is simply incorrect. This mistaken description of the option does not create an option for Appellees to meet the terms and conditions of Appellant's offer." But Appellees did not argue that the sales contract created anything. Instead, they argued that because in the sales contract, Appellant agreed that the ROFR allowed them to purchase the Property on the terms offered in the sales contract, he cannot now argue to their detriment that the ROFR did not contain such a term. We agree. Appellant wants to enforce the sales contract, which he contends is a valid and enforceable agreement, against Appellees. He argues that Appellees did not properly exercise the ROFR because they did not comply with Exhibit A of the sales contract, which attempted to force an auction for the Property. But he wants to avoid application of another provision of Exhibit A, in which he acknowledged that the ROFR gave Appellees the right to buy the Property at the terms of the sales contract. This he cannot do.[14] Appellant makes no argument supported by authority

---

[13] *... See id.*

[14] *... See id.*; *see also In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex. 2001) ("[A] litigant who sues based on a contract subjects him or herself to the contract's terms."); *LDF Const., Inc. v. Bryan*, Nos. 10-08-00315-CV, 10-08-00348-CV, 10-08-00407-CV, 2010 WL 1052863, at *6 (Tex. App.—Waco Mar. 10, 2010, no pet.) ("A plaintiff cannot sue for the benefits on the contract, in essence

9

as to why estoppel by contract should not apply, and he makes no argument supported by legal authority other than the lack of a specified purchase price as to why the ROFR is not valid and enforceable.[15] We hold that the trial court did not err by granting summary judgment on Appellees' claim that Appellant is estopped from making such an argument. We overrule Appellant's first issue.

In Appellant's second issue, he argues that even if the ROFR was valid, the trial court nevertheless erred by granting summary judgment because Appellees did not properly exercise the ROFR. Appellees had argued in their summary judgment motion that they were free to disregard the auction provisions in Exhibit A because those terms were imposed in order to defeat their ROFR.

If a seller imposes a term in an offer that is not commercially reasonable, is imposed in bad faith, or is designed to defeat a preferential right, the holder of the preferential right may reject that term in exercising the right.[16] But Appellant argues that this court "should focus on the terms imposed by [McGilvery]," not the prospective buyer (Appellant). In other words, we should look not to whether *he* imposed terms in the offer that were designed to defeat Appellees' ROFR, but whether McGilvery was attempting to defeat that right. He then argues that the

_____

sue for breach of cont[r]act, and sue on only part of the contract.").

[15] *See* Tex. R. App. P. 38.1(i).

[16] *FWT, Inc.*, 301 S.W.3d at 802; *see also Tex. State Optical, Inc. v. Wiggins*, 882 S.W.2d 8, 11 (Tex. App.—Houston [1st Dist.] 1994, no writ).

terms in Exhibit A secured the best possible price for McGilvery and that there is no basis for an inference that she imposed the auction terms in bad faith to defeat Appellees' rights.

While the case law addressing bad faith terms has so far considered the actions of the selling property owner, we know of no reason why this law should not be applied to a prospective buyer. Whichever party is responsible for the term's inclusion in the offer, that term is part of the offer that the right holder must accept unequivocally in order to exercise the right. We see no reason why the prospective buyer should be able to impose terms that are specifically designed to defeat a preferential right when the seller cannot. If the intent of the term's inclusion is to defeat the preferential right, the right holder is not bound to accept it.

We note that Appellant cites no authority in support of his contention that a prospective buyer may insert terms in an offer to defeat a preferential right when a seller may not. And he offers no explanation for *his* purpose in inserting the auction provisions other than to avoid the ROFR. Instead of making a definite offer from which Appellees could base their decision as to whether or not to exercise their ROFR, Appellant attempted to create a situation in which, if Appellees wanted to exercise their preemptive right, they would be forced to participate in an auction. Under Exhibit A, Appellees could decline to buy the Property and allow the sale with Appellant to go forward at a price of $450,000, but they themselves could not purchase the Property at that price; instead, they could only agree to participate in

11

an auction for the Property. Appellant could pay $450,000 and buy the Property (if Appellees declined to buy the Property), but Appellees could not. Under Appellant's auction terms, there would never be a definite, final price term for Appellees to accept or reject because Appellant would always have an opportunity to make a higher bid. Thus, under Exhibit A, Appellees were not actually allowed to purchase the Property at the same price for which Appellant could purchase and McGilvery would sell the Property. We can think of no other purpose—and Appellant has argued none—for Appellant to insert this provision other than to give him the opportunity to avoid the ROFR. Appellees could therefore reject that term and exercise their right to purchase the Property at the same price at which, under the sales contract, Appellant could purchase the Property if Appellees declined to exercise the ROFR—$450,000. We therefore overrule Appellant's second issue and hold that the trial court did not err by granting summary judgment for Appellees.

In his third issue, Appellant argues that the trial court erred by denying his motion for summary judgment because the summary judgment evidence established that he is entitled to recover specific performance of the sales contract by Appellees. Appellant concedes in his brief that a property owner is excused from consummating a sale of real property when that property is subject to a prior, valid right of first refusal. Appellant makes no argument regarding the invalidity of the ROFR other than the arguments made under his first two issues. Accordingly, we overrule

12

Appellant's third issue and hold that the trial court did not err by denying his motion for summary judgment.

Because we have held that the trial court did not err by granting summary judgment for Appellees and by denying Appellant's motion for summary judgment, we do not reach Appellant's fourth issue arguing that the trial court erred by not granting him attorney's fees.[17]

Having overruled Appellant's dispositve issues, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED: August 26, 2010

---

[17] *See* Tex. R. App. P. 47.1.