COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-232-CV

 

 

LINDON M. STEWART                                                                       APPELLANT

 

                                                             V.

 

JOSEPH S. LANGDON AND                                                              APPELLEES

KAREN
LANGDON

 

                                                       ------------

 

                 FROM
THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

Appellant
Lindon M. Stewart appeals from the summary judgment
granted in favor of Appellees Joseph S. Langdon and
Karen Langdon.  In four issues, Appellant
argues that the trial court erred by granting Appellees=
cross-motion for summary judgment, by denying his motion for summary judgment,
and by not awarding him attorney=s
fees.  Because we hold that the trial
court did not err by granting summary judgment for Appellees,
we affirm.

Background

In
1994, Appellees purchased property from their
neighbors, Mark and Lillie Stewart (Appellant=s
uncle and aunt) and then sold the property to Laurel McGilvery;
the property=s
purchase was partially financed with a vendor=s
note retained by Appellees.  The parties also executed an AOption
to Purchase Real Estate,@ in which McGilvery granted Appellees Aan
exclusive right of first refusal and option to purchase@ the
property if she wanted to sell it in the future.  The instrument stated that it would expire in
October 2005.

In
2003, McGilvery sold back to Appellees
fifty-two acres of the property and obtained a release of lien on the remaining
ninety-one acres that she retained.  On
November 30, 2007, McGilvery and Appellees
executed another AOption to Purchase Real
Estate@ (AROFR@),
replacing the previous, now expired, instrument.  The new instrument applied to the ninety-one
acres that McGilvery still owned (Athe
Property@).  The ROFR again
granted Appellees Aan
exclusive right of first refusal and option to purchase@ and
stated that A[t]he
purchase price for the . . . [P]roperty shall be on
such terms and conditions as the parties agree.@  In the document, McGilvery
agreed Ato
make available to [Appellees] any contract to
purchase the [P]roperty given to [McGilvery]
for the purpose of purchasing the [P]roperty prior to
[Appellees] exercising their option to purchase the
[P]roperty.@  The ROFR, which
contained an expiration date of November 30, 2022, was recorded in the county
property records.

On
March 23, 2009, McGilvery executed a contract for
sale of the Property (Asales contract@) to
Appellant.  The sales contract listed the
sale price as $450,000.  Attached to the
contract as Exhibit A was a document, drafted by Appellant, that acknowledged
that the Property A[was] subject to an option
agreement . . . giving [Appellees the] option to
purchase the Property on the same terms as stated in this Contract if they
exercise their election to purchase within five days in the manner stated in
their Option Agreement.@  Exhibit A then stated that if Appellees elected to exercise their option, Appellant had
the right to increase the amount of the offer by delivering an amended contract
to McGilvery. 
This new amended offer would be presented to Appellees,
and if they still wished to exercise their option, Appellant would again have
the opportunity to increase the amount of his offer until either Appellees declined to purchase the Property or Appellant
declined to increase his offer.  In other
words, Exhibit A attempted to set up an auction for the property between
Appellant and Appellees.  If Appellees did
not exercise the option as to the amended contract offered by Appellant, then
Appellant and McGilvery would proceed to closing on
the amended contract.

A
copy of the sales contract with Appellant=s
information redacted was forwarded to Appellees with
notice that they had five days to elect to purchase the Property on the same
terms.  Appellees
elected to purchase the Property.  In
doing so, they advised McGilvery that they did not
consider Exhibit A to be binding on them and that, if she refused to sell the
property to them, they would sue her for specific performance.  McGilvery sold the
Property to Appellees for the same price that had
been offered by Appellant in the sales contractC$450,000.

After
McGilvery sold the Property to Appellees,
Appellant sued Appellees, seeking a judgment ordering
Appellees to convey the Property to him or,
alternatively, a judgment for Aloss
of bargain damages.@  He filed a motion for partial summary
judgment, asking the court to compel Appellees to
convey the Property to him under the terms of the sales contract.  He asserted that the Apurported
option agreement@ between Appellees
and McGilvery was unenforceable because it contained
neither a definite purchase price nor a method of ascertaining the purchase
price and was only an unenforceable agreement to negotiate.  Alternatively, he argued that Appellees did not properly exercise the option because they
did not comply with Exhibit A and therefore failed to accept all the terms and
conditions of the sales contract. 
Appellant=s motion also asked for a
trial on some other issues that he later nonsuited.  All of Appellant=s
claims that survived the nonsuit were addressed by
his motion for summary judgment.

Appellees
filed a cross-motion for summary judgment. 
They argued that the evidence established that they had a valid right of
first refusal that they had properly exercised; that Appellant=s
contract with McGilvery was subject to the right of
first refusal; that because Appellant was not a party to the agreement between
them and McGilvery, he had no standing to assert it
was invalid; that he was not entitled to equitable relief; and that they had
established as a matter of law the affirmative defenses of estoppel
and unclean hands.  The trial court
granted their motion and denied Appellant=s
motion without specifying the grounds it relied on.

Standard of Review

We
review a summary judgment de novo.[2]  We consider the evidence presented in the
light most favorable to the nonmovant, crediting
evidence favorable to the nonmovant if reasonable
jurors could, and disregarding evidence contrary to the nonmovant
unless reasonable jurors could not.[3]  We indulge every reasonable inference and
resolve any doubts in the nonmovant=s
favor.[4]  A defendant who conclusively negates at least
one essential element of a cause of action is entitled to summary judgment on
that claim.[5]  A defendant is entitled to summary judgment
on an affirmative defense if the defendant conclusively proves all the elements
of the affirmative defense.[6]  To accomplish this, the defendant-movant must present summary judgment evidence that
establishes each element of the affirmative defense as a matter of law.[7]

When
both parties move for summary judgment and the trial court grants one motion
and denies the other, the reviewing court should review both parties=
summary judgment evidence and determine all questions presented.[8]  The reviewing court should render the
judgment that the trial court should have rendered.[9]

Analysis

Appellant=s
first two issues address whether the trial court erred by granting Appellees=
motion for summary judgment.  In his first issue, Appellant argues that the
trial court erred by granting Appellees=
cross-motion for summary judgment because the summary judgment evidence did not
establish that Appellees had a valid preemptive right[10]
to purchase the Property.

In
the trial court, Appellant argued that McGilvery was
required to sell the Property to him under the sales contract unless Appellees had a valid, enforceable ROFR
and that the instrument purporting to be a ROFR was
not an enforceable contract because it had no price term.  On appeal, he likewise argues that only the
existence of a valid preemptive right could excuse McGilvery=s
failure to convey the Property to him and that the ROFR
was not an enforceable agreement because it contained no price term.

Appellees
argued in their summary judgment motion that the ROFR,
taken as a whole, provided that Appellees could
exercise their right to purchase the Property on the terms in the sales
contract and that Appellant was estopped from arguing
that the ROFR did not so provide because in the sales
contract, he affirmatively stated that the Property was subject to a ROFR that allowed Appellees to
purchase the Property in accordance with the sales contract=s
terms.  On appeal, Appellant must argue
and show that Appellees failed to establish their
entitlement to summary judgment on these grounds.  In response to Appellees= estoppel claim, Appellant argues that he is not bound by
his assertion on that point in the sales contract.

AEstoppel by
contract,@ a
form of quasi-estoppel, is simply a provision in the
law that Aa
party is bound by the terms of his own contract until it is set aside or
annulled for fraud, accident, or mistake.@[11]  With the application of estoppel
by contract, Aa
party to a contract will not be permitted to take a position inconsistent with
its provisions, to the prejudice of another.@[12]

Exhibit
A to the sales contract stated that A[t]he
parties acknowledge that the Property is subject to an option agreement . . .
giving [Appellees the] option to purchase the
Property on the same terms as stated in this Contract if they exercise their
election to purchase within five days in the manner stated in their Option
Agreement.@  The exhibit then set up the auction provision
relied on by Appellant, allowing Appellees to make an
offer to buy on the same terms as Appellant but giving Appellant the right to
make a counteroffer.  Thus, Appellant
stated in his sales contract, in a provision added by him, that the ROFR gave Appellees the option to
purchase the Property on the terms set out in the sales contract.  He should not be allowed to take a different
position to the prejudice of Appellees while
attempting to enforce the same sales contract against them.[13]

Appellant
states in his brief that AExhibit A of the Contract .
. . mischaracterizes the ROFR and is simply
incorrect.  This mistaken description of
the option does not create an option for Appellees to
meet the terms and conditions of Appellant=s
offer.@  But Appellees did
not argue that the sales contract created anything.  Instead, they argued that because in the
sales contract, Appellant agreed that the ROFR
allowed them to purchase the Property on the terms offered in the sales
contract, he cannot now argue to their detriment that the ROFR
did not contain such a term.  We
agree.  Appellant wants to enforce the
sales contract, which he contends is a valid and enforceable agreement, against
Appellees.  He
argues that Appellees did not properly exercise the ROFR because they did not comply with Exhibit A of the
sales contract, which attempted to force an auction for the Property.  But he wants to avoid application of another
provision of Exhibit A, in which he acknowledged that the ROFR
gave Appellees the right to buy the Property at the
terms of the sales contract.  This he
cannot do.[14]  Appellant makes no argument supported by
authority as to why estoppel by contract should not
apply, and he makes no argument supported by legal authority other than the
lack of a specified purchase price as to why the ROFR
is not valid and enforceable.[15]  We hold that the trial court did not err by
granting summary judgment on Appellees=
claim that Appellant is estopped from making such an
argument.  We overrule Appellant=s
first issue.

In
Appellant=s
second issue, he argues that even if the ROFR was
valid, the trial court nevertheless erred by granting summary judgment because Appellees did not properly exercise the ROFR.  Appellees had
argued in their summary judgment motion that they were free to disregard the
auction provisions in Exhibit A because those terms were imposed in order to
defeat their ROFR.

If a
seller imposes a term in an offer that is not commercially reasonable, is
imposed in bad faith, or is designed to defeat a preferential right, the holder
of the preferential right may reject that term in exercising the right.[16]  But Appellant argues that this court Ashould
focus on the terms imposed by [McGilvery],@ not
the prospective buyer (Appellant).  In
other words, we should look not to whether he imposed terms in the offer
that were designed to defeat Appellees= ROFR, but whether McGilvery was
attempting to defeat that right.  He then
argues that the terms in Exhibit A secured the best possible price for McGilvery and that there is no basis for an inference that
she imposed the auction terms in bad faith to defeat Appellees=
rights.

While
the case law addressing bad faith terms has so far considered the actions of
the selling property owner, we know of no reason why this law should not be
applied to a prospective buyer. 
Whichever party is responsible for the term=s
inclusion in the offer, that term is part of the offer that the right holder
must accept unequivocally in order to exercise the right.  We see no reason why the prospective buyer
should be able to impose terms that are specifically designed to defeat a
preferential right when the seller cannot. 
If the intent of the term=s
inclusion is to defeat the preferential right, the right holder is not bound to
accept it.

We
note that Appellant cites no authority in support of his contention that a
prospective buyer may insert terms in an offer to defeat a preferential right
when a seller may not.  And he offers no
explanation for his purpose in inserting the auction provisions other
than to avoid the ROFR.  Instead of making a definite offer from which
Appellees could base their decision as to whether or
not to exercise their ROFR, Appellant attempted to
create a situation in which, if Appellees wanted to
exercise their preemptive right, they would be forced to participate in an
auction.  Under Exhibit A, Appellees could decline to buy the Property and allow the
sale with Appellant to go forward at a price of $450,000, but they themselves
could not purchase the Property at that price; instead, they could only agree
to participate in an auction for the Property. 
Appellant could pay $450,000 and buy the Property (if Appellees declined to buy the Property), but Appellees could not. 
Under Appellant=s auction terms, there would
never be a definite, final price term for Appellees
to accept or reject because Appellant would always have an opportunity to make
a higher bid.  Thus, under Exhibit A, Appellees were not actually allowed to purchase the
Property at the same price for which Appellant could purchase and McGilvery would sell the Property.  We can think of no other purposeCand
Appellant has argued noneCfor Appellant to insert this
provision other than to give him the opportunity to avoid the ROFR.  Appellees could therefore reject that term and exercise
their right to purchase the Property at the same price at which, under the
sales contract, Appellant could purchase the Property if Appellees
declined to exercise the ROFRC$450,000.  We therefore overrule Appellant=s
second issue and hold that the trial court did not err by granting summary
judgment for Appellees.

In
his third issue, Appellant argues that the trial court erred by denying his
motion for summary judgment because the summary judgment evidence established
that he is entitled to recover specific performance of the sales contract by Appellees.  Appellant
concedes in his brief that a property owner is excused from consummating a sale
of real property when that property is subject to a prior, valid right of first
refusal.  Appellant makes no argument
regarding the invalidity of the ROFR other than the
arguments made under his first two issues. 
Accordingly, we overrule Appellant=s
third issue and hold that the trial court did not err by denying his motion for
summary judgment.

Because
we have held that the trial court did not err by granting summary judgment for Appellees and by denying Appellant=s
motion for summary judgment, we do not reach Appellant=s
fourth issue arguing that the trial court erred by not granting him attorney=s
fees.[17]

Having
overruled Appellant=s dispositve
issues, we affirm the trial court=s
judgment.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL:
LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

 

DELIVERED:  August 26, 2010











[1]See Tex. R. App. P.
47.4.





[2]Mann
Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).





[3]Id.





[4]20801,
Inc. v. Parker,
249 S.W.3d 392, 399 (Tex. 2008).





[5]IHS Cedars Treatment
Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004); see Tex. R. Civ. P. 166a(b),
(c).





[6]Chau v. Riddle, 254 S.W.3d 453, 455 (Tex. 2008); see Tex. R. Civ. P. 166a(b),
(c).





[7]Ryland
Group, Inc. v. Hood,
924 S.W.2d 120, 121 (Tex. 1996).





[8]Mann Frankfort, 289
S.W.3d at 848.





[9]Id.





[10]A right of first
refusal is also referred to as a preemptive right or a preferential right.  FWT, Inc.
v. Haskin Wallace Mason Prop. Mgmt., L.L.P., 301 S.W.3d 787, 793 (Tex. App.CFort Worth 2009, pet.
denied).





[11]Swanson v. Am. Mfg.
Co.,
511 S.W.2d 561, 565 (Tex. Civ. App.CFort Worth 1974, writ
ref=d n.r.e.)
(holding, in a suit for wrongful termination, that because employee signed an
employment application providing that he could be dismissed if he made false
statements on the application and that he would hold his employer blameless if
he were dismissed because of that false statement, and because the employee
admitted he had lied on the application, the employee was estopped
from taking the position that his dismissal was actionable).





[12]Id.





[13]See id.





[14]See id.; see
also In re FirstMerit Bank, N.A.,
52 S.W.3d 749, 755 (Tex. 2001) (A[A] litigant who sues
based on a contract subjects him or herself to the contract=s terms.@); LDF Const., Inc. v. Bryan, Nos. 10‑08‑00315‑CV, 10‑08‑00348‑CV,
10‑08‑00407‑CV, 2010 WL 1052863, at
*6 (Tex. App.CWaco Mar. 10, 2010, no pet.) (AA plaintiff cannot
sue for the benefits on the contract, in essence sue for breach of cont[r]act,
and sue on only part of the contract.@).





[15]See Tex. R. App. P.
38.1(i).





[16]FWT, Inc., 301 S.W.3d at 802; see also Tex. State Optical, Inc. v.
Wiggins, 882 S.W.2d 8, 11 (Tex. App.CHouston [1st Dist.]
1994, no writ).





[17]See Tex. R. App. P. 47.1.