

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

_____

## No. 08-26-00024-CV
_____

Complete Solar, Inc.; T.J. Rodgers; and Brian Wuebbels, Appellants

v.

Andy Phu, Appellee

---

On Appeal from the 433rd District Court
Comal County, Texas
Trial Court No. C2024-0958D

---

## MEMORANDUM OPINION

Appellee Andy Phu sued Appellant Complete Solar Inc.,[1] and two of its corporate officers,

T.J. Rodgers and Brian Wuebbels, (collectively, the Complete Solar Defendants)[2] for, among other

---

[1] Phu initially named "Complete Solaria d/b/a Complete Solar" as the defendant in the lawsuit. However, Complete Solar, Inc. informed both the trial court in its answer to the petition and this Court in its docketing statement that this was incorrect. Our caption therefore reflects its name as Complete Solar, Inc.

[2] In one of its most recent pleadings in the trial court, Complete Solar identified T.J. Rodgers and Bryan Wuebbels as "the current CEO and former COO of Complete Solar, respectively."

things, deceptive trade practices, common law fraud, negligent misrepresentation, and breach of contract with respect to a contract for solar panels. Approximately nine months after answering Phu's petition, the Complete Solar Defendants filed a motion to compel arbitration, pointing to an arbitration agreement in the parties' contract. The trial court denied the motion, and the Complete Solar Defendants appealed.[3] We conclude that the trial court erred by denying the motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Phu's lawsuit

Phu entered into a contract with Complete Solar on September 16, 2022, for the installation of solar panels at his residence (the Solar Contract). According to Phu's lawsuit, he wished to cancel the contract in December 2022 when installation work had not yet begun, but he was convinced by Mag Solar, a company acting as Complete Solar's agent, to go forward with the installation.[4]

Phu contends that Complete Solar and Mag Solar used a contractor named The Real Brady's LLC d/b/a Lonestar Skypower (the Real Brady's), to install the solar panels. According to Phu, the panels were installed incorrectly, and although they passed city inspection, he alleges that they failed inspection by his local city utility at least six times, and he was denied a permit to operate the panels.

---

[3] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code § 73.001. We follow the precedent of the Third Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

[4] In the trial court, Complete Solar acknowledged that it had an agency relationship with Mag Solar, pointing to a "Master Authorized Sales Agent and Independent Contractor Agreement" (the Agent Agreement) the two companies signed on March 28, 2023. The Agent Agreement authorized Mag Solar to offer Complete Solar's residential solar solutions directly to consumers. The Solar Contract was signed by Brydon March on Complete Solar's behalf as the "contractor." March is identified in the record as Mag Solar's corporate officer.

He further claims that, despite knowing the panels were not properly installed and nonoperational, the company from which he obtained a loan to finance the purchase of the panels, Dividend Solar Finance LLC (Dividend), "strong-armed" him into signing a form indicating they were installed so he could obtain a lower interest rate on his loan. According to Phu, despite the nonfunctionality of the panels, he was still required to make payments to Dividend, and although Complete Solar was initially "refunding" the payments, they ceased doing so.

Phu filed his original petition in the trial court on May 28, 2024, naming as defendants: the Complete Solar Defendants, Mag Solar, and one of its corporate officers, Brydon March; Dividend; and the Real Brady's. In the petition, Phu alleged that Complete Solar had breached the Solar Contract by not ensuring that the panels were properly installed and operational. Phu alleged that the various defendants made misrepresentations and/or failed to disclose material information to induce him into entering into the Solar Contract and to not cancel it; engaged in common law fraud; committed violations of the Deceptive Trade Practices Act (the DTPA); and "engaged in a civil conspiracy to defraud Mr. Phu and scam him in their solar panel scheme." Phu sought economic and actual damages, damages for mental anguish, treble damages for the DTPA violations, and exemplary damages based on fraud allegations. He also sought a judgment declaring that the Solar Contract is "null and void" and sought attorney's fees. Phu later amended his petition, raising substantially similar claims.

The Complete Solar Defendants filed a joint answer on September 18, 2024, generally denying Phu's allegations. On an unspecified date, Phu served on the Complete Solar Defendants (1) a request for admissions; (2) a request for production; and (3) interrogatories. Although the Complete Solar Defendants responded to the requests in January 2025, it does not appear that any additional discovery requests were made until May 19–20, 2025, when Phu served notices of

3

deposition on Complete Solar Defendants, Dividend, and March, which all the defendants moved to quash.[5]

On May 23, 2025, counsel for the Complete Solar Defendants emailed Phu's attorney and informed him that the Solar Contract contained "mediation and arbitration clauses" requiring the parties to submit their disputes to mediation and then to arbitration if the mediation was unsuccessful. The email stated, "Assuming you are not amenable to private mediation, then arbitration is the proper forum," and asked if Phu would agree to submit the case to arbitration. Phu's attorney responded by email dated May 27, 2025, stating he was opposed to arbitration. He stated, however, that "we would be open to mediation paid for by your client," and "might be open to mediation [if] each side pays." He stated that he would confer with his client and reach out with a phone call after that. No additional emails or other correspondence are contained in the record on this subject, but it does not appear that mediation took place before the Complete Solar Defendants moved to compel arbitration.

## B. The first motion to compel arbitration

The Complete Solar Defendants moved to compel arbitration on June 10, 2025, providing a copy of the parties' Solar Contract that was signed by both Phu, as the homeowner, and March, as the "contractor" on September 16, 2022.[6] They pointed to the following arbitration agreement contained in an addendum to the Solar Contract:

---

[5] The Complete Solar Defendants' motion to quash was based in part on the contention that Rodgers and Wuebbels did not have any "personal involvement" in the transaction. Complete Solar also argued that the depositions were scheduled "unilaterally" without consultation with their attorneys to confirm their availability.

[6] The signature page of the Solar Contract also included the printed name, "Josh Webb / Director of Sales Operations," but his signature is not on the contract and he is not named as a defendant. Despite March signing, Mag Solar did not move to compel arbitration.

4

**Mediation and arbitration of all disputes.** The parties hereto understand and agree that private mediation and arbitration of any dispute between them arising out of this agreement is a fair and efficient process. Accordingly, both parties agree that any dispute or disagreement between them will be resolved through private mediation as a condition precedent to arbitration rather than through the courts . . . For purposes of this Paragraph 34 a "Claim" shall include claims, counterclaims, crossclaims, and third-party claims, of any nature. If disputes or disagreements cannot be resolved between them, the parties agree that they will first proceed to mediation through a neutral third-party provider, such as JAMS or comparable service. If disputes or disagreements cannot be resolved between them, the parties agree to binding arbitration by such a neutral third party in accordance with the California Arbitration Act ("CAA") and the Federal Arbitration Act ("FAA"), with the CAA controlling, to the extent the CAA does not conflict with the FAA. Costs incurred for these services shall be split equally between the parties, but each party shall pay its own attorneys' fees, if any . . .

The addendum further contained the following notice, in bold font, initialed by Phu:

**NOTICE: By initialing in the space below, you are agreeing to have any dispute arising out of the matters included in the "Arbitration of Disputes" provision decided by neutral mediation and arbitration and you are giving up any rights you might possess to have the dispute litigated in a court or jury trial, and appeal. If you refuse to submit to arbitration after agreeing to this provision, you may be compelled to arbitrate under applicable laws. Your agreement to this arbitration provision is voluntary.**

**I have read and understand the foregoing and agree to submit all disputes arising out of the matters included in the "Arbitration of Disputes" provision to neutral arbitration.**

Complete Solar Defendants also pointed to a second addendum to the Solar Contract, entitled "State Specific Terms & Conditions," which contained a "Texas" section with a similar mediation and arbitration provision, substituting the Texas Arbitration Act (TAA) in place of the California Arbitration Act (CAA) as the governing provision to the extent that the TAA did not conflict with the Federal Arbitration Act (FAA). This addendum was also initialed by Phu.

In their motion, the Complete Solar Defendants argued that, based on the above email exchange with Phu's counsel, Phu was refusing to abide by the arbitration agreement terms, and they were forced to file the motion before going to mediation. They asserted the agreement was

5

governed by the FAA, should be considered valid and enforceable under the FAA, was not "unconscionable," and Phu's claims fell within its scope. The Complete Solar Defendants contended Phu should be required to arbitrate his claims against all of the defendants named in the lawsuit, as Phu alleged in his lawsuit that the other defendants were acting as Complete Solar's agents and had conspired with Complete Solar to defraud him. As explained below, however, the Complete Solar Defendants subsequently changed their position, requesting arbitration with Phu only and seeking to stay the remaining proceedings pending the arbitration outcome.

Phu's response to the motion to compel arbitration raised four grounds for denying the motion. First, Phu argued he was fraudulently induced into signing the Solar Contract and its arbitration agreement was therefore unenforceable. Second, Phu argued the Complete Solar Defendants waived their right to compel arbitration because they did not submit their dispute to mediation prior to arbitration as required by the arbitration clause. Third, he argued the Complete Solar Defendants also waived their right to compel arbitration by substantially invoking the judicial process before filing their motion. Fourth, he pointed out that Dividend had opposed the motion to compel arbitration, and he argued that, assuming Dividend could not be compelled to arbitrate, the entire case should be heard in the trial court given that he alleged a "conspiracy" between the defendants.

In reply, the Complete Solar Defendants maintained they did not waive the arbitration agreement by invoking the judicial process, and Phu did not suffer any prejudice by their delay in moving to compel arbitration. They argued that they satisfied the mediation condition by offering to mediate with Phu's counsel. Moreover, they asserted, it was not too late for the parties to mediate, as "not mediating before filing this motion is no grounds to deny it, since this Court can compel the parties to private or court-appointed mediation and then to arbitration." Complete Solar

6

further argued that Phu's claim that he was fraudulently induced into signing the Solar Contract was unsubstantiated, but that, in any event, because any such alleged fraudulent inducement related to the formation of the Solar Contract, rather than to the formation of the arbitration agreement itself, it did not affect the validity of the arbitration agreement or the arbitrability of his claims.

The trial court held a non-evidentiary hearing on the motion on July 8, 2025, after which it took the matter under submission. The trial court made an unsigned handwritten entry on its docket sheet dated July 13, 2025, stating: "M/to compel arbitration denied" and "condition precedent to attend private mediation unmet[.]"

### C. The second motion to compel and for reconsideration

On September 19, 2025, the trial court granted the Complete Solar Defendants' motion to substitute new counsel. Days later, their new attorney filed "DEFENDANT COMPLETE SOLAR'S MOTION FOR RECONSIDERATION OF MOTION TO COMPEL ARBITRATION," pointing out that, despite its docket sheet entry, the trial court had not yet signed a written order denying the motion. Although the motion indicated that Complete Solar, rather than the Complete Solar Defendants, was the moving party, in the motion, Complete Solar asserted that it was seeking reconsideration of the Complete Solar Defendants' original motion to compel arbitration. We construe it as a motion to compel Phu to arbitrate his claims against Complete Solar and its two corporate officers, Wuebbels and Rodgers.[7]

---

[7] Phu did not provide any basis for suing Wuebbels and Rodgers, other than their status as Complete Solar's corporate officers, and therefore, his claims against them are in effect claims against the corporation itself, as a corporation can only act through its officers. *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 188 (Tex. 2007) (orig. proceeding) (recognizing that "[c]orporations can act only through human agents, and many business-related torts can be brought against either a corporation or its employees"). When, as here, a plaintiff sues a defendant in his capacity as an agent or employee of the corporation for a breach of the corporation's contract and for related torts, the defendant has a right to invoke an arbitration agreement in the contact. *Id*. at 189–90. We therefore conclude that, to the extent Complete Solar is entitled to invoke the arbitration agreement, so too are its corporate officers. *Id*. In reaching this conclusion, we also find it significant that although Phu opposed arbitrating his claims against Dividend, Mag Solar, and the Real

In the motion, Complete Solar explained that its newly retained attorney believed the original motion was not adequately briefed and had overlooked the argument that Phu had waived his right to invoke the condition of mediation by filing his lawsuit without first requesting mediation himself. The motion further asserted that although Complete Solar had offered to mediate, referring to the May 2025 email exchange between the parties, Phu's counsel would only agree to mediate if Complete Solar agreed to pay the costs, which was contrary to the arbitration clause term calling for the parties to equally "split the costs" of any mediation or arbitration services. In turn, it argued that because Phu had failed or refused to submit the matter to private mediation, Phu was not entitled to rely on the failure to satisfy the condition as a basis for denying arbitration.

Newly retained counsel clarified that Complete Solar was only seeking to compel Phu to arbitrate his claims against it, and was not attempting to require any of the other defendants, including Dividend, to arbitrate Phu's claims against them. The motion asked the trial court to stay the judicial proceedings against it and Phu's claims against the other defendants pending the outcome of arbitration "due to the shared operative facts of this matter, the inherently inseparable nature of [Phu's] claims against the defendants, and the impact the litigation would have on an arbitration between Complete Solar and [Phu]."

Phu opposed the motion, contending the trial court had already denied the motion to compel arbitration, and Complete Solar was attempting to "rehash arguments this Court has already considered and rejected." It incorporated by reference its initial grounds for rejecting the motion.

Brady's LLC, as he categorized them as nonsignatories to the contract, he did not object to arbitrating with Wuebbels and Rodgers on that same basis.

8

The trial court held a second hearing on October 14, 2025, at which it recognized that despite the docket sheet entry denying the motion to compel after the first hearing, it did not sign an order to that effect. At the close of the hearing, the court called for proposed orders.

On October 22, 2025, the trial court made a second unsigned handwritten entry on its docket sheet stating that Defendant "Complete Solar m/reconsideration m/compel arbitration denied[.]" The entry further stated "even if condit. precedent waived, Complete Solar waived Rt. to assert arbitration as well."

On November 13, 2025, the Complete Solar Defendants' attorney sent a letter to the trial court indicating that Complete Solar and Phu had unsuccessfully mediated their dispute on November 11, 2025. In the letter, counsel asserted that to the extent the mediation condition precedent was required prior to arbitration, it was now met. Phu's attorney sent a letter the next day to the trial court acknowledging mediation had taken place but contending it came too late in the judicial process to comply with the condition precedent in the arbitration clause.

On November 20, 2025, the trial court signed an order entitled, "ORDER DENYING DEFENDANT COMPLETE SOLAR'S MOTION TO COMPEL ARBITRATION AND MOTION FOR RECONSIDERATION." In its order, the court stated that it was denying both the Complete Solar Defendants' June 10, 2025 motion to compel arbitration, and Complete Solar's September 23, 2025 motion for reconsideration.

The Complete Solar Defendants filed their notice of interlocutory appeal on December 8, 2025, appealing from the trial court's November 20, 2025 order.

## II. ISSUES ON APPEAL

On appeal, the Complete Solar Defendants raise one global issue, contending the trial court erred in denying their motion to compel arbitration. Underlying this broad issue, the parties address

the following sub-issues: (1) whether the Complete Solar Defendants waived their right to invoke the arbitration clause by not engaging in private mediation prior to invoking the arbitration clause; (2) whether the Complete Solar Defendants waived their right to invoke the arbitration clause by substantially invoking the judicial process to Phu's detriment prior to moving to compel arbitration; (3) whether Phu's claim that he was fraudulently induced into signing the Solar Contract renders the arbitration agreement void, or alternatively whether Phu's claims of fraud and negligent misrepresentation fall within the scope of the arbitration agreement; and (4) assuming that the Complete Solar Defendants no longer seek to require the other defendants to arbitrate Phu's claims against them, whether it is proper to order Phu to arbitrate his claims with the Complete Solar Defendants while staying Phu's claims against the other defendants pending the outcome of arbitration.

In addition, Phu raises a jurisdictional issue regarding whether the Complete Solar Defendants filed a timely notice of appeal. We address the jurisdictional argument first, as subject matter jurisdiction is essential for this Court to have the authority to address the merits of the appeal. *See Matter of Estate of Lindsay*, 538 S.W.3d 759, 761 (Tex. App.—El Paso 2017, no pet.) ("Before reaching the merits of the appeal, we must first inquire into our own jurisdiction of the appeal."); *see also Texas Right to Life v. Van Stean*, 702 S.W.3d 348, 355 (Tex. 2024) (per curiam) (recognizing that courts "always have jurisdiction to determine their own jurisdiction").

### III. WHETHER THE NOTICE OF APPEAL WAS TIMELY FILED

Phu is correct that an appellate court lacks subject matter jurisdiction to hear an appeal without the filing of a timely notice of appeal. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 260 (Tex. 2022). Without jurisdiction, we are "powerless to entertain an appeal, no matter how grave the error." *Id.* at 260–61. But we disagree with Phu that the notice of appeal was not timely filed.

10

An interlocutory appeal from an order denying a motion to compel arbitration is expressly authorized by statute. *See* Tex. Civ. Prac. & Rem. Code § 171.098(a)(1); *see also In re Whataburger Restaurants LLC*, 645 S.W.3d 188, 193 (Tex. 2022) (orig. proceeding) (recognizing that a party may file an interlocutory appeal from an order denying a motion to compel arbitration). A party has 20 days to file a notice of interlocutory appeal from the date the trial court's order was signed. *See* Tex. R. App. P. 26.1(b) (in an accelerated appeal, the notice of appeal must be filed within 20 days after the judgment or order is signed); *see also Matter of Estate of Gibson*, No. 02-23-00478-CV, 2024 WL 273510, at *1 (Tex. App.—Fort Worth Jan. 25, 2024, no pet.) (mem. op.) (per curiam) (discussing requirement that a party must file their notice of appeal from an order denying a motion to compel arbitration within 20 days after the order is signed).

Phu contends we should consider the two docket sheet entries that the trial court made on July 13, 2025 and October 22, 2025, as appealable orders denying the Complete Solar Defendants' motion to compel arbitration. Phu argues that "[t]he Judge's notes clearly indicate a ruling and intent, implicitly denying Complete Solar's Motion[,]" and he asserts that the Defendants "had access to both of these order[s] well in advance of its appeal on December 8, 2025." According to Phu, the Complete Solar Defendants were required to file a notice of appeal from those orders within 20 days, and their December 8th notice of appeal came too late.

There are several problems with this argument. Phu does not cite any authority in support of his contention that a docket sheet can be considered an appealable order. To the contrary, as a general principle, a trial court's docket entry cannot be considered a substitute for a written order.[8]

---

[8] We do not address the limited exceptions that are inapplicable here, such as when the trial court announces its decision in open court while calling the attention of the parties to the docket entry or when the court formally files the docket entry with the clerk as the trial court's judgment. *See In re DeMattia*, No. 05-21-00460-CV, 2021 WL 5480680, at *1 (Tex. App.—Dallas Nov. 23, 2021, orig. proceeding) (mem. op.) (citing *Bailey–Mason v. Mason*, 122 S.W.3d 894, 897 (Tex. App—Dallas 2003, pet. denied)); *see also Garza v. Texas Alcoholic Beverage Comm'n*, 89 S.W.3d 1,

11

*See First Nat'l Bank of Giddings, Texas v. Birnbaum*, 826 S.W.2d 189, 190–91 (Tex. App.—1992, no writ) (per curiam) (citing *Emerald Oaks Hotel/Conference Center, Inc. v. Zardenetta*, 776 S.W.2d 577, 578 (Tex. 1989, orig. proceeding) ("A trial court's oral pronouncement and docket entry reinstating a cause is not an acceptable substitute for the written order required by [Tex. R. Civ. P. 165a(3)].")).

In addition, in its November 20, 2025 order, the court expressly stated that it had considered the motion and was entering its decision denying the Complete Solar Defendants' motion "*on this day*" (emphasis added). A docket sheet entry "cannot be used to contradict or prevail over a final judicial order." *See Birnbaum*, 826 S.W.2d at 190–91 (citing *N–S–W Corp. v. Snell*, 561 S.W.2d 798, 799 (Tex. 1977) (orig. proceeding)); *see also Kalyanaram v. Burck*, 225 S.W.3d 291, 303 (Tex. App.—El Paso 2006, no pet.) ("Docket sheet entries such as this cannot be used to overrule or contradict a written order of the trial court."). Thus, "when there is a question concerning the date judgment was rendered, the date the judgment was signed prevails over a conflicting docket sheet entry." *Garza v. Texas Alcoholic Bev. Comm'n*, 89 S.W.3d 1, 6–7 (Tex. 2002) ("Because the signed judgment takes precedence over the docket sheet entry, we do not consider the docket sheet to be a timely rendition.").

The statute governing appeals from interlocutory orders of this nature requires the notice of appeal to be filed within 20 days after the court's order or judgment was *signed*. *See* Tex. R. App. P. 26.1(b). Here, the first signed order denying the Complete Solar Defendants' motion to

---

7 (Tex. 2002) (district court's initialed, handwritten entry on docket sheet reciting the substance of the court's final order was not a judgment absent evidence that court had publicly announced its decision, issued a memorandum, or otherwise publicly announced rendition on that date).

compel arbitration is the November 20, 2025 order.[9] Because the Defendants filed their notice of interlocutory appeal 18 days later, on December 8, 2025, we conclude the notice of appeal was timely filed.

We next turn to the merits of the appeal and the issue of whether the trial court erred in denying the motion to compel arbitration.

## IV. STANDARD OF REVIEW AND APPLICABLE LAW GOVERNING MOTIONS TO COMPEL ARBITRATION

Arbitration has been defined as "a contractual proceeding by which the parties to a controversy or dispute, in order to obtain a speedy and inexpensive final disposition of matters . . . submit the controversy to such tribunal for determination in substitution for the tribunals provided by the ordinary processes of the law." *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992). Because arbitration is "a matter of consent, not coercion," parties cannot be compelled to arbitrate any controversy unless they have contractually agreed to do so. *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 701 (Tex. 2023).

A party seeking to compel arbitration has the burden to (1) establish the existence of a valid and enforceable arbitration agreement, and (2) demonstrate that the claims asserted are within the scope of the agreement. *See Bonsmara Nat. Beef Co. v. Hart of Texas Cattle Feeders, LLC*, 603 S.W.3d 385, 397 (Tex. 2020). In general, these are considered "gateway matters," i.e., substantive questions of arbitrability, which a court is tasked with determining. *See TotalEnergies E&P USA,*

---

[9] The trial court's order also denied the motion for reconsideration which, standing alone, would be a non-appealable order. *See Nazareth Hall Nursing Ctr. v. Castro*, 374 S.W.3d 590, 593 (Tex. App.—El Paso 2012, no pet.) (recognizing that a motion to compel arbitration is appealable while a motion for reconsideration is not); *Gossett Jones Homes, Inc. v. Bluebonnet Lane Cityhomes Condo. Ass'n, Inc.*, No. 03-24-00261-CV, 2024 WL 4375799, at *1 (Tex. App.—Austin Oct. 3, 2024, no pet.) (mem. op.) (recognizing same). But, as explained above, it was nonetheless the court's first appealable order denying the motion to compel arbitration, and we therefore treat it as such.

13

*Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 701 (Tex. 2023) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (recognizing that in the absence of an agreement to the contrary, "gateway" questions of arbitrability to be decided by a court include "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy")). The parties, however, may delegate the question of whether their dispute falls within the scope of an arbitration agreement to the arbitrator, but any such delegation must be "clear and unmistakable." *See id.* at 702. When as here, no such delegation appears in the record, we must resolve the question of the existence of an agreement and its scope by applying "common principles of general contract law to determine the parties' intent." *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 520 n.15 (Tex. 2015); *see also Wagner v. Apache Corp.*, 627 S.W.3d 277, 283 (Tex. 2021) ("Arbitration agreements are on equal footing with other contracts and must be enforced according to their terms.").

Once the party seeking to compel arbitration establishes that a valid arbitration agreement exists and that the claims fall within the scope of the agreement, the burden shifts to the party resisting arbitration to establish a defense to the agreement's enforcement. *See ReadyOne Indus., Inc. v. Flores*, 460 S.W.3d 656, 661 (Tex. App.—El Paso 2014, pet. denied) (citing *Delfingen US–Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 797 (Tex. App.—El Paso 2013, no pet.)); *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) (recognizing that if the party seeking arbitration carries its initial burden, "the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration"). In the context of enforcing an arbitration agreement,

defenses include unconscionability, duress, fraudulent inducement, and revocation. [10] *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001) (orig. proceeding).

"When, as here, an order denying a motion to compel arbitration does not state the grounds for the denial, we must affirm the order if any of the grounds asserted in the trial court for denying the motion are meritorious." *See CPG 220 Holdings 2014, LLC v. Mulcahy*, 709 S.W.3d 728, 733 (Tex. App.—Austin 2025, pet. denied); *see also Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 118 (Tex. App.—El Paso 2018, no pet.) (court reviews trial court's decision denying a motion to compel arbitration in light of the grounds presented in the trial court by the party resisting arbitration).

We review a trial court's denial of a motion to compel arbitration for an abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018) (citing *In re Labatt Food Serv.*, 279 S.W.3d at 642–43); *see also Wagner*, 627 S.W.3d at 283 (recognizing same). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to guiding rules or principles. *Lucchese, Inc. v. Rodriguez*, 388 S.W.3d 354, 361 (Tex. App.—El Paso 2012, no pet.) (citing *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007)). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). Thus, although we defer to the trial court's factual determinations if they are supported by the evidence, we review the court's legal rulings de novo. *See Henry*, 551 S.W.3d at 115. In particular, we review de novo the trial court's legal determinations, including whether a valid arbitration agreement exists and whether the claims fall within the scope of an arbitration

---

[10] Although the Complete Solar Defendants addressed the issue of whether the arbitration agreement was unconscionable in their initial motion to compel arbitration, Phu did not address the issue in his response to the motion, nor does he do so on appeal.

15

agreement. *See In re Labatt Food Serv.*, 279 S.W.3d at 643; *J.M. Davidson*, 128 S.W.3d at 227. "A trial court that refuses to compel arbitration under a valid and enforceable arbitration agreement has clearly abused its discretion." *In re Whataburger*, 645 S.W.3d at 194 (quoting *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (orig. proceeding)); *see also In re FirstMerit Bank, N.A.*, 52 S.W.3d at 753–54 (stating that when trial court concludes that arbitration agreement encompasses claims and party opposing arbitration has failed to prove defenses, trial court "has no discretion but to compel arbitration").

## V. THE VALIDITY AND SCOPE OF THE PARTIES' AGREEMENT

Phu does not contest that he signed the Solar Contract or that he initialed the arbitration agreement. In the trial court, as on appeal, Phu claims he has evidence to support a finding that he was fraudulently induced into signing the Solar Contract, in the form of misrepresentations made by the various defendants, including the Complete Solar Defendants. He contends that the agreement was therefore not validly formed and consequently unenforceable. On appeal, Phu appears to be arguing in the alternative that, even if we conclude that the arbitration agreement is enforceable, his tort causes of action for fraudulent inducement and negligent misrepresentation do not fall within the scope of the arbitration agreement.

We address his arguments in turn.

### A. Whether Phu was fraudulently induced into signing the Solar Contract is for the arbitrator to decide

In general, courts distinguish between two types of challenges to the validity of an arbitration agreement. First, there are challenges to the validity of the arbitration agreement itself, and second, there are challenges to the validity of the entire contract that contains the arbitration agreement. *In re Labatt Food Serv.*, 279 S.W.3d at 647–48 (citing *Buckeye Check Cashing, Inc. v.*

*Cardegna*, 546 U.S. 440, 444 (2006)). A court may determine the first type of challenge, but a challenge to the validity of the contract as a whole, and not specifically to the arbitration agreement itself, must go to the arbitrator. *Id.* (citing *Buckeye*, 546 U.S. at 444; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404, (1967)); *see also Perry Homes v. Cull*, 258 S.W.3d 580, 589 (Tex. 2008) ("[A]rbitrators generally must decide defenses that apply to the whole contract, while courts decide defenses relating solely to the arbitration clause."); *In re Merrill Lynch*, 235 S.W.3d 185, 190 & n.12 (Tex. 2007) (orig. proceeding) (noting that a defense relating to the parties' entire contract rather than the arbitration clause alone is a question for the arbitrators).

Accordingly, "[w]hen a party challenges the validity of the broader contract but not of an arbitration agreement contained within that contract, courts must enforce the arbitration agreement and require the arbitrator to decide the challenge to the broader contract." *TotalEnergies E&P USA*, 667 S.W.3d at 701 (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010)); *see also In re Morgan Stanley & Co.*, 293 S.W.3d 182, 185 (Tex. 2009) (orig. proceeding) ("[D]efenses attacking the validity of a contract as a whole, and not specifically aimed at the agreement to arbitrate, are for the arbitrator, not the court."). Stated otherwise, "challenges relating to an entire contract will not invalidate an arbitration provision in the contract; rather, challenges to an arbitration provision in a contract must be directed specifically to that provision." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 501 (Tex. 2015).

Thus, for our purposes, courts distinguish between a party's claim that he was fraudulently induced into signing an arbitration agreement, which is for the court to decide, and a claim that he was fraudulently induced into signing the contract as a whole, which must be referred to arbitration. *See In re J.D. Edwards World Sols. Co.*, 87 S.W.3d 546, 550 (Tex. 2002) (orig.

proceeding) (citing *Prima Paint Corp.*, 388 U.S. at 403–404 (distinguishing between the two types of claims)); *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008) ("[T]he party opposing arbitration must show that the fraud relates to the arbitration provision specifically, not to the broader contract in which it appears."); *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 755 (recognizing that "while fraud in the inducement of an arbitration agreement is a defense to arbitration, whether the [defendants] made any misrepresentations in the inducement of the underlying contract relates to the contract's validity and can be arbitrated").

As the Austin Court of Appeals has recognized, a party opposing arbitration has the "burden to present evidence" to establish that he was fraudulently induced to sign the agreement to arbitrate, "not the contract as a whole." *See The Boring Co. v. 304 Constr., LLC*, No. 03-23-00394-CV, 2024 WL 2220716, at *8 (Tex. App.—Austin May 17, 2024, no pet.) (citing *In re FirstMerit Bank*, 52 S.W.3d at 756).

> Like a broader common-law fraud claim, a fraudulent-inducement claim requires proof that: (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury.

*Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019). "In a fraudulent-inducement claim, the 'misrepresentation' occurs when the defendant falsely promises to perform a future act while having no present intent to perform it. *Id.* It is the plaintiff's reliance on the false promise that induces him to agree to a contract that he would not have otherwise agreed to if the promise had not been made. *Id.*

Here, at best, Phu appears to be contending that because Complete Solar Defendants delayed in resolving his dispute with them for several years both before and after he filed his suit,

this supports a finding that the defendants had no intent to honor the arbitration agreement from its inception. But Phu cites no authority for the proposition that the Complete Solar Defendants' delay in resolving their dispute, standing alone, can support a finding that they fraudulently induced him into agreeing to the arbitration clause. Nor are we aware of any.

In addition, Phu's pleadings in the trial court lack any allegation that the Complete Solar Defendants made any misrepresentations that fraudulently induced him into agreeing to the arbitration clause, nor did he provide any evidence of such. Instead, Phu only alleged misrepresentations related to the Complete Solar Defendants' statements regarding the effectiveness of the solar panels and the defendants' promise to properly install them at his residence, which allegations relate solely to his claim that he was fraudulently induced into signing the Solar Contract. Whether any such statements fraudulently induced him into agreeing to the terms of the Solar Contract would be for the arbitrator to decide.

Accordingly, we conclude that the trial court could not have relied on Phu's claim that he was fraudulently induced into signing the Solar Contract as a basis for denying the motion to compel arbitration.

### B. Phu's tort claims are within the scope of the agreement

We next consider whether Phu's claims fall within the scope of the arbitration agreement. Phu appears to admit that his breach-of-contract claims against the Complete Solar Defendants come within the scope of the arbitration clause, but he contends that his tort claims for fraudulent inducement and negligent misrepresentation do not. The Complete Solar Defendants, on the other hand, contend that all of Phu's claims are factually intertwined and therefore fall within the scope of the arbitration agreement. We agree.

19

"To determine whether a party's claims fall within an arbitration agreement's scope, we focus on the complaint's factual allegations rather than the legal causes of action asserted." *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 754. Given the presumption in favor of arbitration when the parties have entered into a valid arbitration agreement, "we resolve any doubts" about the scope of the agreement in favor of coverage. *Id.*; *see also Henry*, 551 S.W.3d at 115 (recognizing same). The presumption in favor of arbitration "is so compelling that a court should not deny arbitration '*unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue.'" *Henry*, 551 S.W.3d at 115 (quoting *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (emphasis in original)).

When determining whether a tort claim falls within a scope of an arbitration agreement in a contract, a court considers whether "the facts alleged 'touch matters,' have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract that is subject to the arbitration agreement"; if so, "the claim will be arbitrable." *See In re Dillard Dep't Stores, Inc.*, 181 S.W.3d 370, 377 (Tex. App.—El Paso 2005, orig. proceeding); *The Boring Co.*, 2024 WL 2220716, at *7 (recognizing same); *see also Hou–Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205–06 (Tex. App.—Houston [1st Dist.] 1997, orig. proceeding) (deceptive trade practices, misrepresentation, negligence, fraud, defamation, and tortious interference claims were all subject to arbitration clause where they arose out of and were related to contract). As the Austin Court has recognized, "[i]f a dispute is 'factually intertwined' with arbitrable claims, the parties should be compelled to arbitrate their dispute even if the dispute is grounded in a legal theory distinct from a breach of contract claim." *See In re Sun Commc'ns, Inc.*, 86 S.W.3d 313, 318 & n.6 (Tex. App.—Austin 2002, orig. proceeding) (per curiam) (citing *Jack B. Anglin*, 842 S.W.2d at 270–71) (because plaintiff's tort claims related to alleged misrepresentations that were "factually

20

intertwined" with contract claim, tort claims were subject to arbitration even though "grounded in a legal theory distinct from its contract claim"). On the other hand, "if the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract, the claim is not subject to arbitration." *In re Dillard Dep't Stores, Inc.*, 181 S.W.3d at 377; *see also In re Sun Commc'ns*, 86 S.W.3d at 318 (recognizing that court must determine if the facts alleged in support of a tort claim, standing alone, are independent of the contract and whether the tort claim could be maintained without reference to the contract).

Phu contends his tort claims for fraudulent inducement and negligent misrepresentation fall into the latter category, as they "stand independently of the contract," and they "are not subject to arbitration merely because a contractual relationship exists." Phu reasons that his tort "claims arise from alleged misrepresentations used to induce entry into the agreement—not from the performance of the agreement itself." He argues that his claims therefore "do not depend on the contract's terms for their existence" and concludes that the trial court could have relied on this as a basis for refusing to compel arbitration—at least with respect to those claims.

The Texas Supreme Court, however, has expressly recognized that claims of fraud, fraud in the inducement, and misrepresentation may "arise out of and relate to" a contract for purposes of determining the scope of an arbitration agreement. *See Capital Income Props.–LXXX v. Blackmon*, 843 S.W.2d 22, 23 (Tex. 1992) (orig. proceeding) (per curiam). Thus, when a contract calls for arbitration of all claims "arising out of or relating to the agreement," tort claims that allege fraudulent inducement in the formation of the parties' contract, are "within the scope of an agreement." *Rodriguez v. Texas Leaguer Brewing Co. L.L.C.*, 586 S.W.3d 423, 433 (Tex. App.— Houston [14th Dist.] 2019, pet. denied); *Capital Income Props.-LXXX*, 843 S.W.2d at 23 (holding

that partners' claims of fraudulently inducing partners to invest in the partnership were within scope of clause requiring arbitration of claims "arising out of" or "relating to" the partnership agreement); *Prima Paint*, 388 U.S. at 406 (holding that the agreement to arbitrate "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof" is easily broad enough to encompass Prima Paint's claim that its execution of the consulting agreement was procured by fraud)).

Here, the arbitration clause in the parties' Solar Contract was broad in nature, requiring "[m]ediation and arbitration of *all disputes*" (emphasis added). It further provided that the parties agreed "that private mediation and arbitration of *any dispute between them arising out of this agreement* is a fair and efficient process" (emphasis added). In addition, the notice provision in the arbitration agreement stated in bold that, "**By initialing in the space below, you are agreeing to have any dispute arising out of the matters included in the "Arbitration of Disputes" provision decided by neutral mediation and arbitration and you are giving up any rights you might possess to have the dispute litigated in a court or jury trial, and appeal**." As the Texas Supreme Court has recognized, "the scope of an arbitration clause that includes all 'disputes,' and not just claims," encompasses more than claims "based solely on rights originating exclusively from the contract" and may include related tort claims, including fraud and violations of the DTPA. *Henry*, 551 S.W.3d at 115–16; *see also Rodriguez*, 586 S.W.3d at 432 (recognizing same in the context of claims of fraudulent inducement). We conclude that Phu's claims of fraudulent inducement and negligent misrepresentation are subject to arbitration under the plain language of the arbitration agreement requiring the parties to arbitrate "all disputes arising under the contract."

Accordingly, the trial court could not have denied the Complete Solar Defendants' motion to compel arbitration on this basis.

## VI. PHU WAIVED HIS RIGHT TO INVOKE THE ARBITRATION AGREEMENT'S MEDIATION CONDITION

Phu argued that the arbitration agreement required "private mediation" as a "condition precedent" to arbitration, yet the Complete Solar Defendants ignored his requests to resolve the matter informally, making no attempt to mediate until well after Phu filed his lawsuit. Phu maintains that the Complete Solar Defendants "breached the plain language of the arbitration clause, and cannot now invoke it." In response, the Complete Solar Defendants argued Phu was the first to file his lawsuit in violation of the arbitration agreement, and he waived his right to invoke the condition precedent against the Complete Solar Defendants. We agree.

Texas courts agree that when an arbitration agreement requires the parties to mediate before arbitration, a party who proceeds first to litigation waives the right to mediate and cannot assert the mediation provision as a condition precedent to arbitration. *See Rodriguez*, 586 S.W.3d at 429–30 (citing *LDF Constr., Inc. v. Bryan*, 324 S.W.3d 137, 146–47 (Tex. App.—Waco 2010, no pet.) (a plaintiff "cannot unilaterally skip the efforts to resolve the dispute by other methods by skipping directly to litigation and thereby avoid the arbitration provision"); *Glob. Evangelism Educ. Ministries, Inc. v. Caddell*, No. 04-08-00686-CV, 2009 WL 398255, at *2 (Tex. App.—San Antonio Feb. 18, 2009, no pet.) (mem. op.) (holding that [the defendant] waived his right to first proceed through mediation by filing suit—rather than seeking mediation—and cannot rely on the failure of conditions precedent to evade being now compelled to arbitration); *Nw. Constr. Co. v. Oak Partners, L.P.*, 248 S.W.3d 837, 852 (Tex. App.—Fort Worth 2008, pet. denied) (compelling party to arbitration, even though condition precedent of mediation had not been fulfilled, because party filed suit without seeking mediation pursuant to the agreement)). "To hold otherwise would allow the [arbitration] provision to be avoided simply because one party chose to go directly to

litigation." *LDF Const., Inc.*, 324 S.W.3d at 146–47. Phu has not cited any authority holding otherwise, nor are we aware of any.[11]

As the Complete Solar Defendants point out, Phu was equally bound to the terms of the agreement to mediate prior to arbitration. We therefore conclude that Phu waived his right to assert the mediation condition precedent to arbitration by filing his lawsuit without first submitting the dispute to private mediation, as required by the arbitration agreement. Thus, the trial court could not have relied upon the Complete Solar Defendants' failure to seek private mediation before moving to compel arbitration as a basis for denying their motion to compel arbitration.

## VII. The Complete Solar Defendants Did Not Substantially Invoke the Judicial Process

Phu contends on appeal, as he did in the trial court, that the Complete Solar Defendants waived their right to compel arbitration because they substantially invoked the judicial process to his detriment or prejudice prior to filing their motion to compel arbitration. Phu argues that the Complete Solar Defendants waited over a year to file their motion to compel arbitration after he filed suit, engaged in substantial discovery, and caused him "great expense in litigation." Although he contends he was prejudiced by the delay, he argues in the alternative that, based on a recent

---

[11] The Complete Solar Defendants also contend that nothing in the parties' arbitration agreement suggests the parties intended to forego arbitration if mediation did not occur before they filed their motion to compel, and they point to undisputed evidence that they went to mediation before the trial court denied the motion to compel arbitration. They submit this as an additional basis for finding error in the trial court's decision. *See In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007) (orig. proceeding) (construing a similar arbitration agreement, and concluding that the parties did not intend to dispense with arbitration if mediation did not occur first and that the trial court could not have relied on the failure to mediate in denying the defendant's motion to compel arbitration where mediation occurred after the plaintiff filed suit); *see also 5th & W. Owner, L.P. v. Wasek*, No. 03-20-00458-CV, 2022 WL 91667, at *3 (Tex. App.—Austin Jan. 7, 2022, no pet.) (mem. op.) (recognizing that the parties' arbitration agreement contemplated that "mediation would occur before arbitration, but nothing indicates the parties intended to dispense with arbitration if mediation [did] not occur first"). In light of our conclusion that Phu waived his right to invoke the condition precedent, we need not address this argument.

United States Supreme Court opinion, he was not required to establish he was prejudiced by the Complete Solar Defendants' conduct to support a finding that they waived their right to arbitration.

The Complete Solar Defendants disagree, arguing that in the nine months after they filed their answer to the lawsuit, Phu did very little to move the case forward, they did not engage in any substantial litigation conduct, and they acted consistently with their right to arbitrate prior to filing their motion to compel. They further maintain that a party opposing arbitration is still required to establish that he was prejudiced by the moving parties' litigation conduct, and Phu did not meet his burden of establishing any such prejudice.

## A. Applicable law and standard of review

The Texas Supreme Court has held that "a party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment or prejudice." *Perry Homes*, 258 S.W.3d at 589–90. "The party asserting waiver bears a heavy burden of proof to show the party seeking arbitration has waived its arbitration right." *RSL Funding, LLC*, 499 S.W.3d at 430 (citing *In re Bruce Terminix Co.*, 988 S.W.2d 702, 705 (Tex. 1998) (orig. proceeding) (per curiam)). Because public policy favors the enforcement of contracts, including those related to arbitration, the law imposes a strong presumption against waiver. *See In re Bruce Terminix Co.*, 988 S.W.2d at 705; *see also Perry Homes*, 258 S.W.3d at 590 ("Due to the strong presumption against waiver of arbitration, this hurdle is a high one."). The presumption, however, is rebuttable. *See Perry Homes*, 258 S.W.3d at 590.

When the underlying facts are undisputed, the question of whether a party waived its right to invoke an arbitration agreement is a matter of law subject to de novo review. *G.T. Leach*, 458 S.W.3d at 511; *Perry Homes*, 258 S.W.3d at 598. In resolving the question, we apply a "totality of the circumstances" test and balance a multitude of factors. *Perry Homes*, 258 S.W.3d at 591. These

factors include: (1) whether the party asserting the right to arbitrate is the plaintiff or defendant in the lawsuit; (2) how long the party waited before seeking arbitration; (3) the reasons for any delay in seeking to arbitrate; (4) whether and when the movant knew of the arbitration agreement during the period of delay; (5) how much discovery and other pretrial activity the party seeking to arbitrate conducted before seeking arbitration and whether that activity related to the merits as opposed to matters related to arbitrability or jurisdiction; (6) whether the party seeking to arbitrate asked the court to dispose of claims on the merits; (7) whether the party seeking to arbitrate asserted affirmative claims for relief in court; (8) the amount of time and expense the parties have expended in litigation; (9) whether the discovery conducted would be unavailable or useful in arbitration; and (10) when the case was to be tried. *See G.T. Leach*, 458 S.W.3d at 512–13 (citing *Perry Homes*, 258 S.W.3d at 590–92).

In general, no single factor is dispositive. *RSL Funding, LLC*, 499 S.W.3d at 430. However, all of the factors are rarely present in a single case, and a court may find waiver based on "a few, or even a single one." *Perry Homes*, 258 S.W.3d at 591. The "key factors include the reason for delay in moving to enforce arbitration, the amount of discovery conducted by the movant, and whether the movant sought disposition on the merits." *Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 455 S.W.3d 573, 575 (Tex. 2014) (per curiam) (citing *Perry Homes*, 258 S.W.3d at 590–93); *see also Design Tech Homes of Texas, LLC v. Siemens as Co-Trustees of John Siemens & Vashti Siemens Living Revocable Tr.*, No. 03-23-00735-CV, 2025 WL 62967, at *14 (Tex. App.—Austin Jan. 10, 2025, no pet.) (mem. op.) (recognizing same).

In *Perry Homes*, the Texas Supreme Court further held that substantial invocation of the judicial process standing alone does not constitute waiver of the right to arbitrate unless the party opposing arbitration proves that it suffered prejudice as a result. *Perry Homes*, 258 S.W.3d at 593.

Recently, though, in a case involving an arbitration agreement governed by the Federal Arbitration Act (FAA), the United States Supreme Court concluded that a federal appeals court "was wrong to condition a waiver of the right to arbitrate on a showing of prejudice." *Morgan v. Sundance*, 596 U.S. 411, 417 (2022). The Texas Supreme Court has yet to address whether prejudice is still required under the Texas law to find waiver, and Texas appellate courts currently appear to be split on the issue, with the Austin Court of Appeals not yet having ruled.[12] *See MH Consultants, Inc. v. Martinez*, No. 04-25-00230-CV, 2025 WL 3713674, at *4–5 (Tex. App.—San Antonio Dec. 23, 2025, no pet.) (collecting cases); *Design Tech Homes of Texas*, 2025 WL 62967, at *13 n.8 (recognizing the Supreme Court's holding in *Morgan*, but declining to decide whether it applies to Texas cases where the undisputed evidence did not support a finding that the party moving for arbitration substantially invoked the judicial process).

We have recently continued to apply the prejudice standard out of an abundance of caution in the absence of any indication from the Texas Supreme Court that prejudice is no longer required

---

[12] In its survey of cases, the San Antonio Court of Appeals recognized that the Dallas Court of Appeals has expressly held that, "at least in cases involving the FAA" prejudice is "no longer required in order to establish waiver." *MH Consultants, Inc. v. Martinez*, No. 04-25-00230-CV, 2025 WL 3713674, at *4–5 (Tex. App.—San Antonio Dec. 23, 2025, no pet.) (citing *Dallas Excavation Sys., Inc. v. Orellana*, 697 S.W.3d 702, 709 (Tex. App.—Dallas 2024, no pet.)). It points out that "the First, Thirteenth, and Fourteenth Courts have expressed doubt that *Morgan* directly controls." *Id*. (citing *Thomas Craig Constr., Inc. v. Park Square Condo. Owner's Ass'n*, No. 01-22-00918-CV, 2025 WL 1759012, at *14 (Tex. App.—Houston [1st Dist.] June 26, 2025, no pet.) (mem. op.) ("Texas might no longer require a showing of prejudice in FAA cases."); *McMillin Texas Homes, LLC v. Oliver*, No. 13-23-00286-CV, 2024 WL 484683, at *3 n.8 (Tex. App.—Corpus Christi Feb. 8, 2024, no pet.) (mem. op.) ("[T]he Texas Supreme Court has not yet determined what effect, if any, Morgan has on state waiver law."); *Preferred Pools of Houston, Inc. v. Gossai*, No. 14-23-00635-CV, 2024 WL 4457032, at *7 (Tex. App.—Houston [14th Dist.] Oct. 10, 2024, no pet.) (mem. op.) (noting that "[w]hether [*Morgan*] would govern in state court . . . is unsettled and a matter for the Texas Supreme Court to determine")). The San Antonio Court indicates that the Eighth Court of Appeals appears to have concluded that prejudice is still required. *Id*. (citing *F.T. James Constr., Inc. v. Hotel Sancho Panza, LLC*, 657 S.W.3d 623, 635 (Tex. App.—El Paso 2022, no pet.)). We clarified more recently in *TAC* that we analyze prejudice out of an abundance of caution. *TAC Total Automation Controls, Inc. v. MSC Indus. Supply*, No. 08-24-00150-CV, 2025 WL 2918845, at *11 n.13. (Tex. App.—El Paso Oct. 14, 2025, no pet.) (mem. op.) (assuming without deciding that the Court's opinion in *Morgan* did not abrogate the rule in Texas requiring a showing of prejudice in determining whether a party waived its right to compel arbitration, we analyzed prejudice out of an abundance of caution). In the end, in *MH Consultants*, the San Antonio Court determined that it "need not opine on the applicability of *Morgan* because the record here shows prejudice under the *Perry Homes* standard." 2025 WL 3713674, at *4–5.

under Texas law. *See, e.g.*, *TAC Total Automation Controls, Inc. v. MSC Indus. Supply*, No. 08-24-00150-CV, 2025 WL 2918845, at *11 n.13 (Tex. App.—El Paso Oct. 14, 2025, no pet.) (mem. op.) (assuming without deciding that the Court's opinion in *Morgan* did not abrogate the rule in Texas requiring a showing of prejudice in determining whether a party waived its right to compel arbitration, we analyzed prejudice out of an abundance of caution). However, as set forth below, because we conclude that the Complete Solar Defendants did not substantially invoke the judicial process, we need not consider the prejudice prong in our analysis. *See RSL Funding, LLC*, 499 S.W.3d at 434 (recognizing that when a party opposing arbitration fails to establish the first prong of the test for waiver, i.e., that the moving party substantially invoked the judicial process, it is unnecessary for the court to address the second prong of the analysis, i.e., whether the opposing party suffered any prejudice or detriment); *see also Henry*, 551 S.W.3d at 118 (concluding that because the party moving for arbitration did not substantially invoke the judicial process, the court did not need to address whether the non-moving parties were prejudiced by the moving parties' conduct); *Design Tech Homes of Texas*, 2025 WL 62967, at *13 n.8 (recognizing same).

### B. Analysis

We consider each of the *Perry* factors in turn, but group certain factors together based on their interrelated nature.

#### (1) Complete Solar was the defendant in the lawsuit and did not file any counterclaims or third party claims

Here, the parties asserting the right to arbitrate were Complete Solar and their corporate officers, Rodgers and Wuebbels, all of whom were defendants in the lawsuit. In general, when a defendant is the moving party, this factor weighs against a finding of waiver because the defendant did not choose to litigate the parties' dispute in court. *See G.T. Leach*, 458 S.W.3d at 512–13

28

(finding that because the party moving for arbitration "did not elect to resolve its disputes . . . in court," this factor weighed against a finding of waiver). Moreover, the Complete Solar Defendants did not file any counterclaims or third party claims.

**(2)  The length of delay in filing the motion to compel arbitration**

In both the trial court and on appeal, Phu contends that the Complete Solar Defendants delayed filing their motion to compel arbitration for one year, based on when he states the defendants were served with the petition. The Complete Solar Defendants calculated the period of delay as less than nine months, based on their answer date. The appellate record does not show when the Complete Solar Defendants were served with the petition, but it does demonstrate that the Complete Solar Defendants did not file their original answer or otherwise appear in the case until September 18, 2024, and that they filed the motion to compel less than nine months later on June 10, 2025.[13]

Phu has cited no authority for the proposition that we should begin calculating the period of delay any sooner than when the non-moving party first appeared in the case, nor are we aware of any. *Cf., e.g.*, *Pilot Travel Centers, LLC v. McCray*, 416 S.W.3d 168, 184 (Tex. App.—Dallas 2013, no pet.) (calculating the period of delay at approximately one year between the time the defendant answered the lawsuit and the time it filed its motion to compel).

Regardless of whether we consider the period of delay nine months or one year, any such delay, standing alone, is not sufficient to support a finding that the Complete Solar Defendants waived their right to invoke the arbitration agreement. *See In re Vesta Ins. Group, Inc.*, 192 S.W.3d

---

[13] The billing records submitted by Phu's attorney in response to the motion to compel arbitration indicate that he had difficulty serving Complete Solar and had to seek substitute service through the Secretary of State. As late as July 18, 2024, it appears that counsel was seeking to obtain "whitney certificates" from the Secretary of State to establish service on Complete Solar and Mag Solar.

759, 763 (Tex. 2006) (orig. proceeding) ("Delay alone generally does not establish waiver."). Courts have found similar and even longer periods of delay insufficient, standing alone, to constitute a substantial invocation of the judicial process. *See RSL Funding, LLC*, 499 S.W.3d at 431 (recognizing that the court has "found no waiver in cases where there were delays of as much as eight months and even two years") (citing *Fleetwood Homes of Texas, L.P.*, 257 S.W.3d 692, 694 (Tex. 2008) (eight months); *In re Vesta Ins. Group*, 192 S.W.3d at 763 (two years)); *see also SEB, Inc. v. Campbell,* No. 03-10-00375-CV, 2011 WL 749292, at *6 (Tex. App.—Austin Mar. 2, 2011, no pet.) (mem. op.) (finding a 45-month delay was insufficient, standing alone, to constitute a waiver).

Of more significance, however, is the timing of when the motion was filed relative to a pending trial date or other pending pretrial or discovery deadlines. Moving for arbitration on the "eve of trial" bodes in favor of a waiver finding. *See Perry Homes*, 258 S.W.3d at 596; *see also In re Vesta Ins. Group*, 192 S.W.3d at 764 (recognizing that "allowing a party to conduct full discovery, file motions going to the merits, and seek arbitration only on the eve of trial defeats the FAA's goal of resolving disputes without the delay and expense of litigation"); *see also Hogg v. Lynch, Chappell & Alsup, P.C.*, 480 S.W.3d 767, 773 (Tex. App.—El Paso 2015, no pet.) (finding waiver where party waited to file motion to compel arbitration approximately three months prior to impending discovery deadline and four months before trial setting); *Truly Nolen of Am., Inc. v. Martinez*, 597 S.W.3d 15, 24 (Tex. App.—El Paso 2020, pet. denied) (finding waiver where "Truly Nolen waited until the eve of trial to request arbitration").

Here, no trial date had been set when the Complete Solar Defendants initially filed their motion on June 10, 2025. Phu filed his first motion for a scheduling order 15 days later, on June 25, 2025, and submitted a proposed order with an October 20, 2025 trial date. The court did not

immediately sign the order, but the record contains a copy of this same proposed order with a handwritten strike-through of the October 20, 2025 trial date and two handwritten alternative trial dates next to it in January and February of 2026. The order was signed on July 13, 2025, and filed on July 14, 2025. The word, "draft" was handwritten next to the court's signature and another handwritten note at the bottom of the draft states: "Plaintiff to Redraft Final."

The record reflects that on October 13, 2025, the day before the second hearing on the Complete Solar Defendants' motion, Phu's attorney filed a second "motion for scheduling order," asserting that the Complete Solar Defendants were opposed to setting a trial date because they believed the case should go to arbitration, but that Dividend had agreed to a June 1, 202[6] trial date. He attached a proposed order with a June 1, 2026 trial date and various other interim pretrial and discovery deadlines. During the October 14, 2025 hearing, Phu's attorney acknowledged that he had not previously submitted a final scheduling order for the trial court to sign, asserting that he had not "received the notice of the granting of a scheduling order."

Because the trial court signed Phu's proposed scheduling order approximately five months *after* the Complete Solar Defendants filed their motion to compel arbitration, we cannot say that the delay in moving for arbitration had any effect on pending discovery or trial settings, as none were in place at that time.

### (3) Complete Solar's knowledge of the arbitration agreement and its reason for the delay

The Complete Solar Defendants do not indicate when they learned of the arbitration agreement or their reasons for not filing the motion to compel earlier. However, because Complete Solar was a party to the Solar Contract, we must presume Complete Solar and its corporate officers were aware of the agreement from the outset of the litigation. *See TAC Total Automation*, 2025 WL

2918845, at *12 (presuming that a party who "[has] the opportunity to read a contract containing an arbitration agreement and [signs it], knows its contents") (citing *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) (per curiam)). Moreover, the Complete Solar Defendants have not put forth any reason for the delay.

At the same time, the record contains no evidence that the Complete Solar Defendants' delay in filing the motion to compel arbitration was the result of any "late game tactical" decision that courts recognize as inconsistent with an intent to preserve the right to arbitrate. *See, e.g.*, *Hogg*, 480 S.W.3d at 790–91 (recognizing that appellant's decision to invoke an arbitration clause only after receiving the trial court's adverse ruling was more consistent with a "late game tactical decision" than "a true intent to preserve the right to compel arbitration") (citing *Tuscan Builders, LP v. 1437 SH6 L.L.C.*, 438 S.W.3d 717, 722 (Tex. App.–Houston [1st Dist.] 2014, pet. denied) (the circumstances surrounding the timing of party's motion to compel where more consistent "with a late-game tactical decision than an intent to preserve the right to arbitrate")). As set forth above, no scheduling order was in place at the time the Complete Solar Defendants filed their motion. Accordingly, there is no indication that they filed the motion when they did to avoid any upcoming discovery or pretrial deadlines. Moreover, it does not appear that the trial court had entered any adverse rulings the Complete Solar Defendants were trying to avoid by moving to compel arbitration. *Cf. Hogg*, 480 S.W.3d at 790–91 (finding waiver where appellant only filed her motion to compel arbitration after receiving an adverse ruling in a discovery battle that left her with the possibility that the trial court could impose case-crippling sanctions).

**(4) The amount of discovery and other pretrial activities occurring prior to the motion to compel arbitration**

As the Complete Solar Defendants point out, very little pretrial activity occurred in the trial court before they moved to compel arbitration. The Complete Solar Defendants did not seek any ruling on the merits of the parties' dispute; the only motion they filed was defensive, seeking to quash the notices of depositions Phu served. The filing of defensive motions demonstrates an intent to avoid participating in the judicial process rather than an intent to invoke it. *See, e.g.*, *In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex. 2002) (orig. proceeding) (holding that objecting to trial setting showed intent to avoid rather than to participate in judicial process); *Transwestern Pipeline Co. v. Horizon Oil & Gas Co.*, 809 S.W.2d 589, 593 (Tex. App.—Dallas 1991, writ dism'd w.o.j.) (recognizing that the filing of a protective order in response to a discovery request is an example of a defensive measure that does not invoke the judicial process).

Phu nevertheless contends that the Complete Solar Defendants' participation in discovery shows that they substantially invoked the judicial process prior to moving to compel arbitration. In determining whether a party substantially invoked the judicial process by engaging in discovery, we consider: (1) how much discovery has been conducted and who initiated it; (2) whether the discovery related to the merits rather than arbitrability or standing; (3) how much of the discovery would be useful in arbitration; and (4) whether the movant sought judgment on the merits. *Perry Homes*, 258 S.W.3d at 592; *Henry*, 551 S.W.3d at 117 (recognizing same). A party does not substantially invoke the judicial process merely by participating in discovery. *In re Bruce Terminix Co.*, 988 S.W.2d at 704. However, pursuing "extensive discovery" may substantially invoke the judicial process. *Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 522 (Tex. App.—Austin 1998, no pet.). Whether extensive discovery has taken place depends on the context; "three or four

depositions may be all the discovery needed in one case, but purely preliminary in another." *Perry Homes*, 258 S.W.3d at 593.

Here, the discovery that was conducted went to the merits of the lawsuit, rather than to the issue of arbitrability. However, as the Complete Solar Defendants point out, they did not initiate any of the discovery, and instead only responded to Phu's discovery requests. *See RSL Funding, LLC*, 499 S.W.3d at 433 (finding it significant that the party moving to compel arbitration did not initiate any of the discovery that took place before the motion was filed) (citing *G.T. Leach*, 458 S.W.3d at 513–14 (holding passive participation in extensive pre-trial discovery does not waive the right to arbitrate); *In re Vesta Ins. Grp.*, 192 S.W.3d at 763 (holding a proponent of arbitration is not responsible for extensive discovery conducted by another party)).

We also consider the limited nature of the discovery conducted. Neither party took any depositions before the Complete Solar Defendants filed their motion to compel arbitration; the only discovery that took place consisted of three written discovery responses that Complete Solar provided to Phu in January 2025.

First, Complete Solar responded to Phu's Requests for Admissions, in which Phu sought to have Complete Solar admit to a variety of allegations, including admitting that it did not correctly install the solar panels; that the company made misrepresentations to Phu and other solar customers regarding the effectiveness of solar panels; and that the company engaged in false advertising and/or deceptive trade practices. Complete Solar objected to the requests as vague and ambiguous, and denied each request.

Second, Complete Solar responded to Phu's request for production of documents. Among other things, Phu requested all documents that supported Complete Solar's denial of liability, including documents relating to the installation of the panels; the permits it obtained for the project;

the representations it made to Phu and other customers regarding the effectiveness of solar panels; and any complaints or demand letters the company has received from other customers. Complete Solar objected to the requests as overly broad but produced several documents, most of which Phu presumably had, including the parties' Solar Contract, the site plans for the installation at Phu's home, permits, and an inspection record from the City indicating that the installation passed the city's inspection on January 27, 2023.

Finally, Complete Solar responded to Phu's first set of interrogatories. In the interrogatories, Phu asked for the legal basis for Complete Solar's denial of liability, to which Complete Solar objected, while stating that it did not commit any deceptive trade practices. Complete Solar further objected when asked why it believed the solar panels were not functioning, contending it did not install the panels and all work was done by subcontractors.

We contrast the limited nature of these three discovery responses with the type of extensive discovery that other courts have found to constitute a substantial invocation of the judicial process. *See, e.g.*, *Perry Homes*, 258 S.W.3d at 595–96 (finding waiver where the party moving for arbitration had taken ten depositions, requested disclosures, filed five motions to compel discovery with 76 requests for production, and served three deposition notices for expert witnesses with onerous production requirements); *Courtright v. Allied Custom Homes, Inc.*, 647 S.W.3d 504, 518–19 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (concluding that moving parties substantially invoked the judicial process by serving 47 interrogatories, 135 requests for production, seven deposition notices, and two subpoenas to non-parties, and by "conduct[ing] many hours of depositions and generated hundreds of pages of testimony").

In addition, as set forth above, no discovery deadlines were in place when the Complete Solar Defendants filed their initial motion to compel arbitration; at the time, it appears that the

parties were still at the beginning stages of discovery. *Compare Fritz Mgmt., LLC v. Alfortish Contractors, LLC*, No. 04-22-00572-CV, 2023 WL 2672901, at *5 (Tex. App.—San Antonio Mar. 29, 2023, no pet.) (mem. op.) (finding no waiver where "nothing in the record suggests discovery was complete or close to complete when appellants moved to compel arbitration*") with Hogg*, 480 S.W.3d at 789 (finding waiver, even though the parties did not conduct "full discovery," where they engaged in substantial discovery and "were likely nearing the end of the discovery proceedings" when the motion to compel arbitration was filed).

We also do not find that the time and expenses Phu incurred during the discovery process show that Complete Solar substantially invoked the judicial process.[14] Phu argues that his attorney spent a substantial amount of time reviewing the Complete Solar Defendants' responses, which he contends were made in "bad faith" as they were allegedly incomplete and inadequate, and that his attorney was in the process of preparing "[d]eficiency letters" to their counsel as well as motions to compel the Complete Solar Defendants to provide adequate responses shortly before they moved to compel arbitration. According to Phu, the Complete Solar Defendants should not be allowed to "string[] Mr. Phu along in the discovery process, only to strategically file [their] Motion to Compel Arbitration after Mr. Phu had already begun the process of responding to [its] bad faith abuse of the discovery process." However, because it was Phu's decision to seek a judicial resolution of the discovery dispute, the fact that Phu's attorney may have been in the process of preparing deficiency

---

[14] Phu also complains about the expenses he incurred *before* he filed his lawsuit, when he was seeking to informally resolve his dispute with the various defendants in the case, and he further complains about the damages he has allegedly incurred—and continues to incur—due to his non-functioning solar panels. As the Complete Solar Defendants point out, however, these are not the type of expenses to be considered in our analysis, as they do not relate to the expenses incurred due to the Complete Solar Defendants' litigation conduct. *See Perry Homes*, 258 S.W.3d at 594–95 (recognizing that moving party's "litigation conduct" includes such actions as filing suit, filing dispositive motions, and conducting discovery).

letters or motions to compel discovery does not support a finding that the Complete Solar Defendants substantially invoked the judicial process.[15] *See Fritz Mgmt., LLC*, 2023 WL 2672901, at \*4 (declining to hold that plaintiff's "decisions to seek judicial resolution of discovery disputes are evidence of [the defendant]'s invocation of the judicial process").

Finally, Phu contends that the Complete Solar Defendants' discovery responses prior to the motion to compel arbitration would not be useful in arbitration as they "would either be duplicated or distorted in arbitration." However, he does not explain why, and we do not see how there will be any "duplication" of efforts if the matter went to arbitration. Phu was not asked to produce any documents or answer any requests during discovery, and he did not take any of the Complete Solar Defendants' depositions in the trial court.[16] The only records the Complete Solar Defendants produced related to the parties' transaction and their subsequent dispute, which Phu presumably had prior to the litigation. Phu has not explained why those records would not be useful in arbitration. *See Fritz Mgmt., LLC*, 2023 WL 2672901, at \*4 (finding no waiver where the party

---

[15] We also agree with the Complete Solar Defendants that much of the attorney fees that Phu incurred were "self-inflicted," as Phu not only chose to litigate his claims in a judicial forum despite the Alternate Dispute Resolution provisions, but he was the only party to initiate discovery. *See Dargahi v. Handa*, No. 03-17-00386-CV, 2017 WL 5247517, at \*6 (Tex. App.—Austin Nov. 8, 2017, no pet.) (mem. op.) (holding that much of the expenses the plaintiffs incurred were self-inflicted where they initiated discovery, and the defendant did not seek discovery from them, nor did the defendant file any dispositive motions or other pleadings requiring responses) (citing *SEB, Inc.*, 2011 WL 749292, at \*7 (finding plaintiff's expenses in filing suit in a judicial forum and conducting discovery to be "self-inflicted")); *see also In re Vesta Ins. Grp.*, 192 S.W.3d at 763 (refusing to find waiver where non-movant "sent far more discovery requests than he received" and his "pre-trial costs were largely self-inflicted").

[16] Phu states in his brief that he took March's deposition presumably while this matter was pending on appeal, but he does not explain if or how the deposition would be relevant to his claims against the Complete Solar Defendants or why he could not submit a reporter's record of that deposition in the arbitration proceedings if needed. Further, we note that it was Phu's choice to go forward with the deposition while the Complete Solar Defendants' appeal was pending, and the Complete Solar Defendants cannot be blamed for that decision. *See RSL Funding, LLC*, 499 S.W.3d at 433 (citing *In re Vesta Ins. Grp.*, 192 S.W.3d at 763) (holding a proponent of arbitration is not responsible for extensive discovery conducted by another party)).

opposing arbitration did not demonstrate that the discovery obtained "would be unusable or unavailable in arbitration").

### (5) The totality of the circumstances

Having reviewed all of the factors, we conclude that, based on the totality of the circumstances, Phu has not met his burden of establishing that the Complete Solar Defendants substantially invoked the judicial process prior to filing their motion to compel arbitration. The trial court therefore could not have relied on this as a basis for denying the motion to compel arbitration.

Finding no valid grounds for the trial court's decision to deny the Complete Solar Defendants' motion to compel arbitration, we conclude that the trial court erred in denying the motion.

The Complete Solar Defendants' sole issue on appeal is sustained.

## VIII. WHETHER THE CLAIMS AGAINST THE REMAINING DEFENDANTS MUST BE STAYED PENDING APPEAL

Although we have determined that the trial court erred by denying the motion to compel arbitration, a question remains regarding the Complete Solar Defendants' request to stay Phu's remaining claims against the other defendants.

Both the Federal and Texas Arbitration Acts require courts to stay the litigation of any claims that are subject to arbitration while the arbitration is pending. *See In re Merrill Lynch*, 235 S.W.3d at 195. Given our determination that all of Phu's claims against the Complete Solar Defendants fall within the scope of the arbitration agreement, we conclude that the claims Phu has brought against them must be stayed pending resolution of the arbitration proceedings.

A plaintiff's claims against a nonsignatory to an agreement—which are not subject to arbitration and must instead be litigated in court—may also be stayed pending resolution of the signatories' arbitration proceedings, if: "(1) the arbitrated and litigated disputes involve the same operative facts, (2) the claims asserted in the arbitration and litigation are 'inherently inseparable,' and (3) the litigation has a 'critical impact' on the arbitration." *See Estate of Moncrief*, 699 S.W.3d 315, 337 (Tex. App.—Fort Worth 2024, pet. denied) (citing *In re Devon Energy Corp.*, 332 S.W.3d 543, 548 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding); *In re Merrill Lynch*, 235 S.W.3d at 195 (holding that when an issue is pending in both arbitration and litigation, the FAA generally requires the arbitration to go forward first; arbitration "should be given priority to the extent it is likely to resolve issues material to this lawsuit")).

Because the trial court denied the motion to compel arbitration, it did not have the opportunity to rule on the issue of whether to stay Phu's non-arbitrable claims against the remaining defendants.[17] Nor have the parties—including the nonsignatories—had a chance to address the issue. Given the procedural posture of the case and the lack of any input from the affected parties, we leave this to the trial court to decide in the first instance on remand. *See Daughety v. Nat'l Ass'n of Homebuilders of U.S.*, 970 S.W.2d 178, 182 (Tex. App.—Dallas 1998, no pet.) ("It is axiomatic that justice is 'best served by affording the trial court the first opportunity for review and decision.'") (quoting *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 382 (Tex. 1993) (Phillips, C.J., concurring)). "Addressing matters not specifically presented to the trial court usurps the trial court's authority to evaluate and rule on issues before it and denies the

---

[17] As noted above, March signed the Solar Contract, but neither he nor Mag Solar moved to compel arbitration of Phu's claims against them. We therefore do not opine on whether Phu's claims against March and/or Mag Solar would be subject to arbitration.

appellate court the benefit of the trial court's decision." *Id.* (citing *de Monet v. PERA*, 877 S.W.2d 352, 361 (Tex. App.—Dallas 1994, no pet.) (recognizing that when an appellate court decides an issue not yet ruled upon by the trial court it "usurps the trial court's authority to evaluate and rule on issues before it and denies the appellate court of the benefit of the trial court's decision")).

## IX. CONCLUSION

Because we conclude that the trial court abused its discretion in denying the Complete Solar Defendants' motion to compel arbitration, we reverse the trial court's order. We remand with instructions to the trial court to refer Phu's claims against the Complete Solar Defendants to arbitration, and to determine whether to stay the remaining proceedings against the other defendants while the arbitration is pending.


LISA J. SOTO, Justice

June 2, 2026

Before Salas Mendoza, C.J., Palafox, Soto, JJ.